Wheeler *v.* Hawkins, Assignee, *et al.*

No. 12,974.

WHEELER *v.* HAWKINS, ASSIGNEE, ET AL.

VOLUNTARY ASSIGNMENT.—*Assignee.—Contract.— Consideration. — Waste.—Sureties.—Subrogation.—Practice.—Judgment.—* Where an assignee in a voluntary assignment, without authority but in good faith, paid out of the general fund interest due on a mortgage on the trust estate, upon the parol agreement that if the court or general creditors refused to ratify it, the money was to be repaid, such use of the fund was a waste of the estate for which he became liable on his bond to the general creditors, and upon payment thereof by the sureties of such assignee, they became subrogated to the rights of such creditors and the assignee, and were entitled to enforce the agreement, which was supported by sufficient consideration against the mortgagee, and for that purpose could properly be admitted as co-plaintiffs with such assignee and recover a joint judgment against such mortgagee.

From the Marshall Circuit Court.

*W. B. Hess* and *D. McDuffie,* for appellant.

*A. C. Capron* and *H. Corbin,* for appellees.

COFFEY, J.—This cause, when commenced, was an action by John P. Hawkins, assignee of Thomas Shakes, against Amzi L. Wheeler, for the recovery of money.

Hawkins obtained judgment, but upon an appeal to this court the judgment was reversed for insufficiency of the complaint, and the cause was remanded for further proceedings. *Wheeler* v. *Hawkins,* 101 Ind. 486.

After the cause was remanded Hawkins filed an amended complaint, which charged that, on the 11th day of February, 1874, Thomas Shakes, an insolvent debtor, made a voluntary assignment of all his property to the plaintiff for the benefit of his creditors, under the provisions of the act of March 5th, 1859; that the deed of assignment, a copy of which was filed with the amended complaint, was recorded in due time in the county of Marshall, in this State, where Shakes resided and where the property was situate; that the said Hawkins gave

bond and qualified as the assignee and trustee of the said Thomas Shakes, Horace Corbin, Albertus C. Capron, George R. Reynolds and Alexander C. Thompson becoming sureties on his bond, after which he took charge of the estate so assigned to him; that a part of the property so conveyed to him by the deed of assignment was one hundred and sixty acres of land, described in the complaint, and situate in said county of Marshall, upon which the defendant, Wheeler, held a mortgage securing notes amounting in the aggregate to the sum of four thousand dollars, executed by the said Thomas Shakes, Daniel E. Van Valkenburgh and Lawrence Shakes to the defendant for a part of the purchase-money of said land; that the plaintiff, Hawkins, proceeded to convert the personal property assigned to him into money, and deposited the proceeds in the Plymouth bank, an institution owned and controlled by the defendant; that a large number of unsecured claims, amounting in the aggregate to ten thousand dollars, were filed and allowed against the estate of the said Thomas Shakes; that the defendant did not file his notes against the estate, but continued to hold the same as secured claims; that the plaintiff, at the time, believed the equity of redemption in the mortgaged lands to be of considerable value, and having been notified by the defendant that one thousand dollars of the mortgage debt was due and the foreclosure of the mortgage imminent, and the defendant having proposed that if he, the plaintiff, would, out of the trust funds in his hands, pay the interest due on the notes secured by the mortgage and six hundred dollars of the amount due on the principal sum, he, the defendant, would withhold foreclosure, and give him, the plaintiff, further time to sell the land and realize, if possible, something in that way for the general creditors; the plaintiff accepted the proposition of the defendant, and, accordingly, on the 25th day of August, 1874, paid to the latter, out of said trust funds, the interest due on the mortgage debt, and six hundred dollars on the principal, amounting in all to nine hundred and forty-one

dollars and fifteen cents; that at the time of such payment the defendant well knew that the same was paid out of the trust fund in the hands of the plaintiff belonging to the estate of the said Thomas Shakes, and that the plaintiff had no right to make such payment on the mortgage notes; that when the payment was made the defendant agreed that if the general creditors should become dissatisfied with it, and should object to it, or if the court should refuse to ratify such payment, he would, on demand, pay the amount of money thereby received by him back to the plaintiff; that from said 25th day of August, 1874, to the time of the commencement of this suit, the plaintiff was unable to sell the mortgaged lands for anything in excess of the mortgage lien; that the defendant, on or about the 1st day of January, 1876, commenced an action in the Marshall Circuit Court to foreclose his mortgage, and that the mortgaged lands at the time did not exceed in value the balance due on the mortgage debt, including the costs of foreclosure; that the entire assets which had come into the plaintiff's hands did not exceed in value the sum of three thousand dollars; that there would, consequently, be a large deficiency of assets for the payment of the general creditors of the estate; that the payment made to the defendant as herein above stated was without the knowledge or consent of the general creditors; that the defendant, upon demand, had refused to repay or return said sum of nine hundred and forty-one dollars and fifteen cents, or any part thereof. Wherefore judgment was demanded.

The defendant demurred to this amended complaint, but his demurrer was overruled.

After filing the foregoing amended complaint by Hawkins, Capron, Reynolds and Corbin, three of the sureties on the bond given by Hawkins, filed their petition asking leave to be made parties plaintiffs to the action, which was granted.

They thereupon filed what they termed an amended supplemental complaint in their own names as plaintiffs, in which they repeated and set forth the substantial facts averred in

the amended complaint of Hawkins as above set out, and pro-
ceeded to allege that since the institution of this suit the gen-
eral creditors of Thomas Shakes had brought suit against
Hawkins and his sureties on his bond for alleged breaches of
his trust, the chief complaint being based upon his payment
of the sum of nine hundred and forty-one dollars and fifteen
cents, as above shown, to the defendant, Wheeler, which was
at the trial adjudged to have been an illegal payment; that
in said action the said general creditors recovered against
Hawkins and his said sureties a judgment for one thousand
four hundred dollars, mostly on account of such payment;
that Hawkins was at the time insolvent, and that by reason
of the premises they, the said Capron, Reynolds and Corbin,
as such sureties, were compelled to pay, and did pay, on such
judgment in equal proportions the sum of one thousand and
ninety-six dollars; that in said action against Hawkins and
his sureties it was adjudged that the said Capron, Reynolds
and Corbin should become the owners of the money so held
to have been illegally paid by Hawkins to the defendant to
the extent that they might be required to pay the judgment
therein rendered, and that they should be subrogated to the
rights of Hawkins in such money. Wherefore they demanded
that they should be subrogated to all the rights of both
Hawkins and the general creditors of Thomas Shakes in the
money in question, and that they might have all other
proper relief.

The defendant moved to strike out this complaint of Ca-
pron, Reynolds and Corbin, upon the ground that it was
inconsistent with and antagonistic to the complaint of Haw-
kins, and was in fact the commencement of a new suit
against him. The court overruled this motion; and the de-
fendant then filed a demurrer to said complaint upon the
ground that there was a defect of parties plaintiffs, because
Capron, Reynolds and Corbin were improperly joined with
Hawkins as plaintiffs in the action, and that it did not con-

tain facts sufficient to constitute a cause of action against him ; but his demurrer was also overruled.

Afterwards issues were formed upon the complaints, and the circuit court, after hearing the evidence, made a special finding of the facts which was in general accord with the allegations of the complaint of Capron, Reynolds and Corbin. As to the payments made by these last named persons on the judgment rendered against them for breach of his bond by Hawkins, the finding was that each had paid the sum of $322, and that Alexander C. Thompson the other surety had paid nothing.

Upon the facts as thus found, the circuit court came to the conclusion : 1st. That the law was with the plaintiffs upon the issues formed between the parties.    2d. That the plaintiffs Capron, Reynolds and Corbin were entitled to recover from the defendant the sum of $1,212.35.    3d. That the plaintiff Hawkins was entitled to recover of the defendant the sum of $225.23.    Judgment was rendered accordingly against the defendant.

Section 2674, R. S. 1881, is as follows : "Any part of the property assigned on which there are liens or encumbrances may be sold by the trustee subject to such liens or encumbrances, but in case the trustee should be satisfied that the general fund would be materially increased by the payment of such liens or encumbrances, he shall make application, by petition to the judge of the circuit court, for leave so to do, and abide the order in that behalf.    Before the holder of any lien or encumbrance shall be entitled to receive any portion of his debt out of the general fund, he shall proceed to enforce the payment of his debt by sale, or otherwise, of the property on which such lien or encumbrance exists ; and for the residue of such claim, such holder of such lien or encumbrance shall share *pro rata* with the other creditors, if entitled so to do by the laws of this State."

It is plain that under the provisions of this statute, Wheeler was not entitled to any of the money in the hands

of Hawkins, as a general fund, until he had exhausted the mortgaged property.

The use by Hawkins of any part of this fund in payment of the debt secured by the mortgage was a waste of the estate for which he became liable at once to the general creditors. Burrill Assignments, 553.

In the absence of an agreement to repay the money it would be regarded as a voluntary payment, and could not be recovered back by Hawkins. *Egbert* v. *Rush,* 7 Ind. 706; *Connecticut M. L. Ins. Co.* v. *Stewart,* 95 Ind. 588.

It is contended by the appellant, that inasmuch as the payment was made by Hawkins to Wheeler in violation of law, therefore, it can not be recovered back. We are not inclined to adopt that view of the case. It may be conceded as a general proposition of law, that a contract prohibited by law is void. The general doctrine as to such contracts is, that the courts will not enforce them, nor aid in the recovery of money paid in pursuance of their terms, but parties who have contracted in violation of law will be left without remedy whenever they are *in pari delicto,* but we do not think this case falls within the rule. While it is true that Wheeler was not entitled to this money until after the mortgaged property was exhausted, still the mortgaged property when exhausted might not have paid his debt in full, in which event he would have been entitled to share *pro rata* as to the unpaid balance with the general creditors. There is nothing in the statute expressly prohibiting the contract, and Hawkins seems to have been acting in good faith for what he believed to be the best interest of the estate represented by him. It is not every contract which is forbidden by law that is void. There are some exceptions to the general rule. See *Deming* v. *State, ex rel.,* 23 Ind. 416; *New England Fire, etc., Ins. Co.* v. *Robinson,* 25 Ind. 536.

If Hawkins had loaned this money to Wheeler it would have been an unlawful use of the funds, yet it can not be

successfully contended that he could resist the payment of a note given for its repayment upon that ground.

We do not think the contract to repay the money upon the contingency set forth in the complaint is void as being in violation of law.

When this case was here on a former appeal it was held that the complaint did not show a sufficient consideration for the agreement therein set out.

The amended complaint is essentially different from the one then appearing in the record, and we think it now shows a sufficient consideration for the agreement entered into between Hawkins and Wheeler.

We do not think the court erred in overruling the demurrer of Wheeler to the amended complaint.

The petition upon which Capron, Reynolds and Corbin were admitted as co-plaintiffs in the action is not in the record, and by reason of that fact we have no authentic information as to the grounds upon which they were so admitted. But it can not be said that their complaint was inconsistent with, or antagonistic to, the complaint of Hawkins. It was intended to accomplish the same object which Hawkins was seeking to accomplish, namely, the recovery of the trust funds in the hands of Wheeler. It is true that they might have brought an independent suit for that purpose, but the law abhors a multiplicity of suits, and to avoid that calamity the court doubtless thought it best to admit them to join with Hawkins, to the end that one trial might determine the whole controversy. By the payment of the judgment recovered on the bond of Hawkins by the sureties, Capron, Reynolds and Corbin, they became subrogated to the rights of both the general creditors, who recovered the judgment, and of Hawkins, to the amount they were compelled to pay. As the amount paid by them was less than the whole sum in the hands of Wheeler, it follows that the trust fund in Wheeler's hands belonged to them and Hawkins. In support of the doctrine that they were entitled to recover, see 2 Perry Trusts,

section 828, *McComas* v. *Long*, 85 Ind. 549, *Boyer* v. *Libey*, 88 Ind. 235, Sheldon Subrogation, section 89, and Brandt Suretyship, section 260.

The objection is further made that, in any event, the matters alleged by Capron, Reynolds and Corbin did not show a joint claim in their favor against Wheeler, and that for that reason, if for no other, the demurrer to their complaint ought to have been sustained.

The general rule is that where a surety pays the debt of his principal he acquires only a several claim against the latter for reimbursement, or against each one of his solvent co-sureties for contribution, but there are cases in which co-sureties may unite in an equitable suit either for reimbursement or contribution. Brandt Suretyship, section 255.

Several creditors may often unite in the enforcement of a common but not joint interest. They may unite in a suit to enforce separate liens on the same property or separate claims against the same common fund. Several creditors of the same insolvent debtor may also unite in a suit to set aside a fraudulent conveyance of real estate, and to subject the same to sale for the payment of their several debts. It was, therefore, upon the same general principle, competent for Capron and his co-sureties to join in the enforcement of their separate claims against the common fund in the hands of Wheeler, to which they had become subrogated. Upon the same principle it was proper to permit Hawkins to join with them also, as he likewise had an interest in that fund.

The proceedings in this case are somewhat out of the usual order in practice, but we do not think that any substantial error was committed by the court below in permitting Hawkins and his sureties to join in a common cause to recover from the defendant a fund in which they were all interested.

A joint judgment in favor of Capron, Reynolds and Corbin was proper. *Home Ins. Co.* v. *Gilman*, 112 Ind. 7. At least it is not a matter of which the appellant can be heard to complain.

As found by the court he owes the aggregate amount for which the judgment was rendered, and it must be immaterial to him whether he pays it to them jointly or severally. The division of the fund is a matter that concerns them, and is of no interest to him.

We find no error in the record for which the judgment should be reversed.

The judgment is affirmed, with costs.

Filed Jan. 12, 1889.