MOLLIE HOBGOOD v. LOGAN HOBGOOD, WALTER PIPPEN ET AL. AND HENRY JOHNSON AND JULIAN BAKER, TRUSTEES.

(Filed 22 September, 1915.)

**1. Wills—Interpretation—Estates—Contingent Devises.**

A devise to the testator's sister for life, then to his nieces, P. and M., with provision that should either of his said nieces die leaving no child or representative thereof, the one-half interest of such should go to the other; but should both nieces die without child or representative of such, then the property devised to them shall go to certain named nephews: *Held,* the life tenant having died, the nieces took, respectively, an estate in fee in one undivided half of the property, defeasible as to each upon her dying without child or representative thereof, and in case either die without such representative, her share would go to the survivor in fee, the entire estate being then a fee defeasible in case of such survivor's death without child or descendant, and passing, in that event, to the nephews named as ultimate devisees; and should some of these last have died without children, then to the survivors.

**2. Same—Children—Designation of Estate.**

An estate for life, then to P. and M., but should either die without child or children, then to certain ultimate devisees: *Held,* the children of P. and M. are not given directly any estate or interest in the lands, their existence being only referred to as the determining event in the defeasible estates taken by their parents, and they may take only such as may come to them by descent.

**3. Estates—Wills—Contingent Interests—Deeds and Conveyances—Warrants —Consideration.**

Where lands are devised to P. and M., but should either die without children, then to the survivor, and M. has died without children, P. taking the whole estate, defeasible in the event of her death without children, whereupon it would go to certain ultimate devisees: *Held,* a conveyance to P. from such ultimate known devisees would be valid, when made upon a good consideration, and will conclude all who must claim under the grantors, even though the conveyance is without warranty or valuable consideration.

**4. Judgments—Scope of Action—Estoppel.**

Where a former decreè has been entered in proceedings which were only designed and intended to convert certain lands devised into cash and to preserve the fund in lieu thereof, and which goes beyond its intended purpose and erroneously construes the terms of the will, and without all the necessary parties, it will not thereafter estop the beneficiaries, denied their rights under a proper interpretation of the devise, from asserting them in a proper and independent suit; and in this case it is further held, that mutuality, necessary to an estoppel, was lacking.

**5. Trusts and Trustees—Trust Funds—Lands—Proceeds—Payment—Receipt —Voucher.**

Where lands have been sold and the purchase price is held by trustees in lieu thereof, subject to the final decree of the court, and accordingly the right of the person entitled has been adjudicated, his receipt held by the trustee is a sufficient voucher for the disbursement of the trust estate.

APPEAL by Johnston, trustee, from *Carter, J.,* at the June Term, 1915, of EDGECOMBE.

Civil action to recover a trust fund. The facts chiefly relevant to the inquiry are very well set forth in the complaint, as follows, with the addition that the recited consideration of the deed of Logan Hobgood to the plaintiff, his mother, is natural love and affection, and $1.

2. That Martha A. Knight, late of Edgecombe County, North Carolina, died leaving a last will and testament, which is recorded in the office of the clerk of the Superior Court of Edgecombe County, in Will Book H, page 420, the third item of which is as follows:

"I give and devise all my right, title and interest in and to the tract of land situate in said county and State, upon which I now reside, to my sister, Mary L. Drew, during the term of her natural life, and after her death to my nieces, Pattie Pippen and Mollie Hobgood, their heirs and assigns, share and share alike. If, however, the said Pattie Pippen shall die leaving no child, and no representative of a child, it is my will and desire that the one-half interest in the realty devised to her as aforesaid in this item of my will shall go to the said Mollie Hobgood, her heirs and assigns; but if, on the other hand, the said Mollie Hobgood shall die leaving no child, and no representative of a child, it is my will and desire that the one-half interest in the realty devised to her as aforesaid in this item of my will shall go to the said Pattie Pippen, her heirs and assigns. In the event that the said Pattie Pippen and Mollie Hobgood shall both die leaving no child, and no representative of a child, it is my will and desire that the said realty devised to them as aforesaid in this item of my will shall go to my nephews, Joseph Pippen, Walter Pippen, William Pippen, Lafayette Pippen, and Thurston Pippen, their heirs and assigns."

3. That Mary L. Drew is now dead; and the land mentioned in item 3 of said will of Martha A. Knight and so devised to Pattie Pippen and Mollie Hobgood, was, on the .... day of ........, ........, sold

by W. H. Johnston, administrator *d. b. n.* of Peter E. Knight, and the proceeds thereof belonging to the said Martha A. Knight, towit, the sum of $942.67, was paid by said W. H. Johnston, administrator *d. b. n.,* to L. B. Knight and Henry Johnston, executors of the said Martha A. Knight.

4. That at the June Term, 1899, of the Edgecombe County Superior Court, in an action entitled W. H. Johnston, administrator *d. b. n.,* with the will annexed of Peter E. Knight, L. B. Knight and Henry Johnston, executors of the will of Martha A. Knight, and others, against William Pippen and others, a judgment was rendered in which Henry Johnston was appointed trustee for the sum of $445.10, to be held for the use and benefit of the said Pattie Pippen under the terms of item 3 of the will of the said Martha A. Knight, and Dr. Julian M. Baker was appointed trustee for the sum of $445.09, to be held for the use and benefit of the said Mollie Hobgood under the terms of item 3 of the will of the said Martha A. Knight, these being the amounts paid to the said L. B. Knight and Henry Johnston, executors, by the said W. H. Johnston, administrator, as aforesaid. (See page 259, minute docket of June Term, 1899, of the Superior Court of Edgecombe County.)

5. That the said Henry Johnston and Dr. Julian M. Baker accepted said trusts and entered upon their respective duties, and they now have on hand the sums of $445.10 and $445.09, and some interest, respectively, and held under the terms of their said trusts.

6. That the said Pattie Pippen is dead, and left no child or representative of a child; that Joseph Pippen and William Pippen, two of the residuary devisees under item 3 of the will of said Martha A. Knight, are dead, and left no child or representative of a child or children; that Mollie Hobgood is now living and has one child over 21 years of age, who is a defendant in this action; and Walter Pippen, Lafayette Pippen and Thurston Pippen, the remaining residuary devisees under item 3 of the said will, are now living.

7. That on 12 March the said Walter Pippen, Lafayette Pippen and Thurston Pippen, the remaining residuary devisees under the will of the said Martha A. Knight, for proper and legal consideration, executed and delivered to the said Mollie Hobgood a certain paper-writing by the terms of which the said Walter Pippen, Lafayette Pippen and Thurston Pippen did give, grant, assign, alien and convey to the said Mollie Hobgood, her heirs and assigns, all their right, title and interest which they now have or may hereafter have in and to the funds now in the hands of Henry Johnston and Dr. Julian M. Baker, trustees of the funds paid them by L. B. Knight and Henry Johnston, executors of the will of the said Martha A. Knight. That on 29 April, 1915, Logan Hobgood, the only child of Mollie Hobgood, plaintiff in this action, in consideration of love and affection and $1, executed and de-

HOBGOOD *v.* HOBGOOD.

livered to said Mollie Hobgood a certain paper-writing, by the terms of which he granted, assigned, aliened and conveyed to said Mollie Hobgood all his right, title and interest which he then had, or might thereafter have, in and to said trust funds held by Henry Johnston and Dr. Julian M. Baker, trustees as aforesaid; and on 3 May, 1915, Thurston Pippen and M. V. Pippen, his wife, and Lafayette Pippen and Glynn Pippen, his wife, executed and delivered to said Mollie Hobgood a certain paper-writing, by the terms of which they gave, granted, assigned, aliened and conveyed to said Mollie Hobgood all their right, title and interest which they then had, or might thereafter have, in and to said trust funds held by Henry Johnston and Dr. Julian M. Baker, trustees as aforesaid; that copies of these conveyances are hereto annexed and made a part of this allegation.

8. That the above named parties, towit, Walter Pippen (unmarried), Thurston Pippen and wife, M. V. Pippen, Lafayette Pippen and wife, Glynn Pippen, and Logan Hobgood are the only persons, other than said plaintiff, who could in any way become interested in said trust funds held by Henry Johnston and Dr. Julian M. Baker, trustees as aforesaid.

The answer substantially admits the above allegations, except that it sets forth the exact terms of the decree under which the trust fund is held, as follows:

"A decree was entered as set forth in said paragraph, appointing Henry Johnston trustee of the fund of $445.10 to be held for Pattie Pippen, and Dr. Julian M. Baker was appointed trustee for the sum of $445.09 to be held for Mollie Hobgood, but the terms of trust in said decree read as follows, viz.: Pay to J. M. Baker $445.09, 'to be held by him upon the following uses and trusts, towit: to invest the same and pay the income arising therefrom annually to Mrs. Mollie Hobgood, during her natural life, and at her death, leaving a child or a representative of a child, then to pay said trust fund (the principal thereof) to said child or representative of a child. But in the event of her death, leaving no child and no representative of a child, then the said Julian M. Baker, trustee, is to pay the income arising from said trust fund to Pattie .Pippen, during her life, and at her death, leaving a child or representative of a child, then to pay said trust fund to such child or representative of a child. In the event that said Mollie Hobgood and Pattie Pippen shall both die leaving no child or representative of a child, the said Julian M. Baker, trustee, is to pay said trust fund to Joseph Pippen, Walter Pippen, William Pippen, Lafayette Pippen, and T. F. Pippen, share and share alike.

Upon the facts, the court, being of opinion that the fund held by Henry Johnston, originally for Pattie Pippen, now deceased, vested, on such death, absolutely in the petitioner, entered judgment that the same be paid to her, less certain *costs* and *fees,* and being of opinion that the

fund held by Julian Baker, representing the original interest of petitioner, should be further held, adjudged that, as to that portion, the trustee, Julian Baker, should continue to invest the fund and pay the interest to the petitioner during her natural life, as directed by the former decree.

To which judgment the trustee, Henry Johnston, having duly excepted, appealed.

*Allsbrook & Phillips for plaintiff.*
*G. M. T. Fountain for defendant.*

HOKE, J.   The fund in the hands of these two trustees was evidently designed and intended by the court and parties interested to stand in lieu of the land and to be subject to the terms and conditions of the will of Martha A. Knight, by whom it was devised.   Recurring, then, to the clause of the will in question, under numerous decisions of our Court, it conferred upon Pattie Pippen and Mollie Hobgood, respectively, an estate in fee in one undivided half of the property, defeasible as to each upon her dying without child or the representative of a child, and, in case either died without child or descendant of such child, her share was to be owned in fee by the survivor, the entire estate being then a fee defeasible in case of such survivor's death without child or descendant, and passing, in that event, to the ultimate devisees, nephews of the devisor, named and specified in the will, towit: Joseph, Walter, William, Lafayette and Thurston Pippen, and two of these having died without children, the said interest was then held and owned by the other three, Walter, Lafayette and Thurston.   *Burden v. Lipsitz,* 166 N. C., p. 523; *Rees v. Williams,* 164 N. C., p. 128; same case, 165 N. C., p. 201; *Smith v. Lumber Co.,* 155 N. C., p. 389; *Harrell v. Hagan,* 147 N. C., p. 111; *Whitfield v. Garris,* 134 N. C., p. 24.

Under these authorities and by the terms of the devise, the children of Pattie Pippen and Mollie Hobgood are not given directly any estate or interest in the land; their existence is only referred to as the determining event in the defeasible estates taken and held by their mother, and, of themselves, they have no interest except what might descend to them from their respective mothers.   This being true, and Pattie Pippen having died without child or children or the descendants of such, the present estate in fee in the entire property is held and owned by Mollie Hobgood, defeasible at her death without child, etc., and in which event the property would go to the ultimate devisees, the Pippen nephews, and all of these having conveyed their interest, title, and estate to Mollie Hobgood, there is no reason, under the terms of the devise, why she should not presently take and receive the entire fund; our decisions on the subject being to the effect that when the holders of a contingent estate are specified and known, they may assign and convey it, and, in the absence of

fraud or imposition, when such a deed is made, it will conclude all who must claim under the grantors, even though the conveyance is without warranty or any valuable consideration moving between the parties. This was held for law by a majority of the Court in *Kornegay v. Miller,* 137 N. C., p. 659, in which case, it may be noted, that the contingent interest of Annie Slocumb was held to pass by her quit-claim deed and for a recited consideration of $1. In many of the decisions on the subject it had been held that, in order to a valid conveyance of such an interest, there must have been a valuable consideration passed or there must have been a warranty estopping the heir by way of rebutter. *Wright v. Brown,* 116 N. C., p. 26; *Foster v. Hackett,* 112 N. C., p. 546; *Watson v. Smith,* 110 N. C., p. 6; *Southerland v. Stout,* 68 N. C., p. 446, and the writer was of opinion that such was the law, but a majority of the Court, after full consideration, having come to a different conclusion and the decision being in the line of unfettering estates, the dissent was only noted, the writer desiring, as far as he could, in that way to give notice that the case would be no longer questioned and might be considered by the profession as a rule of property. The case of *Burden v. Lipsitz,* cited and to some extent relied upon by appellant, is not in contravention of this position. In *Kornegay's case,* as in this, the ultimate devisees were ascertained and designated by name, and they having the contingent estate, it was held that they could convey it, and their descendants or heirs, having to claim through them, were concluded by the deed of the ancestor. *Kornegay v. Miller, supra; Bodenhamer v. Welsh,* 89 N. C., p. 78. But in *Burden's case* the ultimate takers, designated in the devise as "the heirs of the devisor," were not known nor could they be ascertained till the preceding estate had terminated. *Harrell v. Hagan, supra; Buchanan v. Buchanan,* 99 N. C., p. 308; and the claimants being required to fill the description when such estate fell in, and, in that event, taking the estate direct from the devisor (*Sessoms v. Sessoms,* 144 N. C., p. 121), there was, therefore, no ascertained, recognized owner of the contingent estate in a position to make a conveyance, and the deed tendered by the sons and daughters of the devisor did not assure the title. These might not have been "the heirs of the devisor" when the preceding estate terminated.

It was urged for the appellant that the former decree established an interest in the fund in favor of the children of Pattie Pippen and Mollie Hobgood, and the present decree having also recognized such an interest, the same not having been appealed from, may not now be disturbed; but we are of opinion that, on the record, such a position cannot be sustained. The former decree, as stated, was designed and intended to preserve the fund in lieu of the property and to subject it to the terms and limitations of the devise, and, while the court below, misconstruing the devise, may have undertaken to recognize an independent interest in

the children, there was nothing in that proceeding that conferred any such power on the court.

As we have endeavored to show, the children of these first takers had no direct interest in the property; they could only take as heirs of their respective mothers, and if any portion of the decree went further, it was entirely beyond the scope of the issue and must be held of none effect. Nor could the judgment operate by way of estoppel, for the children, not being in any way represented before the court, they were in no way bound by the decree, and no more should their mothers be concluded, for it is a fundamental principle in the law of estoppel that they must be mutual. This principle, that a judgment or decree which undertakes to determine rights entirely beyond the scope of the issue may be disregarded even in a collateral proceeding, is very well brought out in the case of *Munday v. Vail,* 34 N. J. L., p. 418. In that case Asa Munday, in 1841, made a deed of trust in favor of himself for life and then to his wife and children. Subsequently, in 1844, one Ephraim Munday filed a bill to subject the property to a debt against Asa, claiming that the deed was fraudulent and void as to his claim. The bill was sustained and decree entered declaring that the deed of trust was fraudulent, null and void, of "no force in law or equity," and that same be delivered up and canceled, and provided further, that the judgment formerly entered, in favor of Ephraim Munday, is and was a valid lien on the property. The judgment debt having been otherwise paid, the property was sold for costs in a suit and conveyed to defendant, and who was also shown to be a devisee of the property under the will of Asa Munday. Case, one of ejectment, in which plaintiffs claimed under a deed from the sole surviving child and issue of Asa and Hettie Munday and to whom the trustee had also conveyed. Defendant claimed under the deed of sheriff and the will of Asa Munday, and, as stated, on the facts, a recovery by the plaintiff was sustained, the Court being of opinion that the portion of the decree which adjudged that the instrument was entirely void and should be delivered up and canceled, was beyond the scope of the issue and could be treated as void in a collateral proceeding. Speaking to this particular question, *Beaseley, C. J.,* delivering the opinion, said: "Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and, third, the point decided must be, in substance and effect, within the issue. That a court cannot go out of its appointed sphere, and that its action is void with respect to persons who are strangers to its proceedings, are propositions established by a multitude of authorities. A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, re-

ceived much judicial consideration. And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment. It is impossible to concede that because A and B are parties to a suit, that a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not. Persons by becoming suitors do not place themselves for all purposes under the control of the court, and it is only over these particular interests which they choose to draw in question that a power of judicial decision arises." And again: "The invalidity of such a decree does not proceed from any mere arbitrary rule, but it rests entirely on the ground of common justice. A judgment upon a matter outside of the issue must, of necessity, be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard. And it is upon this very ground that the parties have been heard, or have had the opportunity of a hearing, that the law gives so conclusive an effect to matters adjudicated. And this is the principal reason why judgments become estoppels. But records or judgments are not estoppels with reference to every matter contained in them. They have such efficacy only with respect to the substance of the controversy and its essential concomitants. Thus, *Lord Coke,* treating of this doctrine, says: "A matter alleged that is neither traversable nor material shall not estop." Co. Litt., 352b.

A similar ruling was made by the same eminent Court, in *Dodd v. Una,* 40 N. J. Eq., 672, where the position was applied and sustained in learned opinions by *Magie, J., Depue, J.,* concurring, and the general principle has been recognized in this jurisdiction in *Springer v. Shavender,* 118 N. C., p. 40, and *Allred v. Smith,* 135 N. C., p. 443, the New Jersey decision, referred to, being cited with approval in the first of these cases.

The decree in the present case being predicated upon the former decision, should, in this feature, partake of the same infirmity, except that in the present suit Logan Hobgood, the only child of petitioner, Mollie, has, with the ultimate devisees and owners of the contingent interest, been made party defendant. It appears in the statement of facts, however, that he, too, has conveyed to his mother, the petitioner, "for love and affection and for $1," all his right, title and interest in the fund.

It appearing, therefore, that the fund is held in lieu of the property devised, and all the parties of record who have or can have any interest have conveyed their right and claim to petitioner, there is no reason that appears to us why the fund held by both trustees should not presently be paid her and her receipt constitute a valid voucher in the disposition of the trust estate. In order that the decree may the better operate for the protection of these trustees, it may be well to amend the decree below so as to direct payment of both funds to the petitioner. This will be

certified, that the former judgment shall be modified and a decree entered in accordance with the rights of the parties as declared in this opinion.

Modified.