J. R. PRICE AND J. H. EDWARDS, ADMINISTRATORS OF S. J. EDWARDS, AND J. H. EDWARDS, INDIVIDUALLY, v. J. S. EDWARDS, MRS. ALICE G. HILL, AND MRS. J. E. MOORE.

(Filed 12 November, 1919.)

1. **Evidence—Deceased Persons—Against Interest.**

   The testimony of an heir at law as to a partnership with deceased, claimed by another of the heirs at law, which is against his interest, is not incompetent under the statute prohibiting testimony of transactions and communications with deceased persons.

2. **Partnership—Statutes—Assumed Names.**

   The intent of chapter 77, Public Laws 1913, requiring that a partnership under an assumed name shall file a certificate in the office of the clerk of the Superior Court setting forth the name under which the business is conducted, with the full names and addresses of the persons owning and conducting it, etc., was to prevent fraud or imposition upon those dealing therewith, and to afford them means for knowing the status and responsibility of the concern with which they deal, and does not apply between partners who are presumed to know these conditions; and a surviving partner may maintain his action against the heirs of the dead one to recover his share in the assets of a partnership in a legitimate business, notwithstanding the business had been conducted in the name solely of the dead partner, and the requirements of the statute had not been complied with.

3. **Same—Legitimate Business—Actions Between Partners.**

   Whether a contract founded on an act in contravention of a statute is void without being expressly declared so depends in a great measure upon the intent of the statute, as disclosed by a proper interpretation; and where a partnership in a legitimate business has been conducted in the name of one of the partners alone, as between themselves, chapter 77, Public Laws 1913, does not apply, and an action of the silent partner to recover his share of the assets from the other is not founded upon any wrong, and the principles relating to such transactions do not apply, or avoid his recovery.

4. **Statutes—Penal—Interpretation—Intent—Common-law Right.**

   Chapter 77, Laws 1913, to regulate the use of assumed names in partnerships, imposes a fine or imprisonment upon the failure of the parties to comply with its provisions in not filing the name of the concern, and of the

partners therein, etc., is a derogation of a common-law right, and will not be extended by construction, but strictly construed as to the legislative intent.

5. **Judgments—Estoppel—Executors and Administrators—Sales—Partnerships.**

Certain farm products owned by the deceased and his administrator were sold at private sale by the latter, under an order of court. *Held,* the question of ownership of the products, or the separate property right of the administrator therein, was not included in the adjudication of sale, and the order does not operate as an estoppel in a subsequent action by the administrator to recover his share of the purchase price.

6. **Judgments—Records—Estoppel—Parties—Privies.**

A court record of an action or proceeding, considered as a memorial of a judgment, imparts absolute verity, and may be collaterally impeached by no one; and the judgment itself has the further effect of precluding a reëxamination into the truth of the matters decided, and is binding upon the parties to the proceedings and their privies, the further and secondary effect of the record considered as a judgment being an estoppel upon them as *res judicata.*

CIVIL ACTION, tried before *Shaw, J.,* and a jury, at March Term, 1919, of STANLY.

Defendants appealed.

This proceeding was brought by the administrator for a final settlement of the estate of S. J. Edwards, the decedent, J. H. Edwards, suing as administrator and in his individual capacity. The intestate left no lineal descendants. His brothers and sisters are: J. H. Edwards, one of the plaintiffs, J. S. Edwards, Mrs. J. E. Moore, and Mrs. Alice G. Hill, who are his next of kin and the distributees of his estate.

S. J. Edwards, at the time of his death, was conducting a mercantile business in the town of Oakboro, in the name of S. J. Edwards. His brother, J. H. Edwards, claimed to be a partner in said business and to own a one-third interest in the same. The defendants, Mrs. J. E. Moore and Mrs. Alice G. Hill, filed answers in which they denied that J. H. Edwards was a partner in said business; they also pleaded chapter 77, Public Laws 1913, in bar of J. H. Edwards' right to recover as such partner, even if it should be found that he owned a one-third interest in said business.

The court submitted two issues to the jury, as follows:

"1. Was the plaintiff, J. H. Edwards, a partner, owning a one-third interest in the business conducted by S. J. Edwards at the time of his death, as alleged by J. H. Edwards?

"2. If so, did the partnership do business in the name of S. J. Edwards without filing in the office of the clerk of the Superior Court of Stanly County a certificate conforming to the requirement of chapter 77, Public Laws 1913, as alleged by the defendants?"

Both issues were answered "Yes."

The other matters embraced in the complaint were reserved to be referred to some one to take evidence and make report of his findings. Some, if not all of these matters, were afterwards settled by agreement filed in the record.

The court entered the following judgment:

"It is, therefore, ordered and adjudged that the plaintiff, J. H. Edwards, was a partner, owning one-third interest in the business conducted by S. J. Edwards at the time of his death, as alleged by J. H. Edwards; it is further ordered that the administrators of S. J. Edwards, deceased, pay the said J. H. Edwards one-third of the proceeds of the said partnership business before final distribution is made, not to exceed one-third of $5,005.49. This cause is retained for further directions."

There was an agreement as to the settling of certain matters not affected by the questions in this appeal.

Judgment was entered upon the verdict, and the defendants, Mrs. Hill and Mrs. Moore, appealed.

*Smith & Gooch for plaintiffs.*
*Stack, Parker & Craig for defendant, Mrs. L. J. Moore.*
*Brock & Henry for defendant, Mrs. Alice Hill.*

WALKER, J., The exceptions must be overruled.

1. The evidence of J. S. Edwards had a tendency to establish the existence of the partnership, and was, therefore, relevant (*Gaylord v. Respass*, 92 N. C., 553; *Fraley v. Fraley*, 150 N. C., 507), and the witness was competent, as he was testifying against his own interest. He is not disqualified in such a case. *Bunn v. Todd*, 107 N. C., 266; *Tredwell v. Graham*, 88 N. C., 208; *Weinstein v. Patrick*, 75 N. C., 344, and *Seals v. Seals*, 165 N. C., 409, where the subject is fully discussed. In the *Treadwell case, supra,* it was said: "Notwithstanding the statute, a party may be called to testify touching a transaction of the opposite party, when it is against his own interest." In *Weinstein v. Patrick, supra,* the Court said: "It would seem that there could be no objection against allowing a witness to testify against his own interest." And in *Seals v. Seals, supra:* "It is not within the spirit or letter of the statute, as his own interest is supposed to be a sufficient protection for the opposite party against false or frabricated testimony. This appears to be well settled by the cases. Harris Seals, the witness, proposed to testify against his own interest, as his brother would get the land and exclude him if the jury should be influenced by his testimony."

2. The defendants contend that plaintiff, J. H. Edwards, cannot recover his interest of one-third in the partnership property as a mem-

ber of the firm, because he and his partner, the intestate, had formed the partnership and transacted its business under an assumed name, or under a designation, name, or style other than the real name, or names, of the individual, or individuals, owning, conducting, or transacting such business, without complying with the provisions of Public Laws 1913, ch. 77, and especially without filing a certificate in the office of the clerk of the Superior Court, setting forth the name under which the business was conducted, with the full names and address of the persons owning and conducting the same.  We think it is apparent from the terms of the statute, when it is read and considered as a whole, and with special reference to its qualifications and restrictions, that it does not apply to a case like this one, where no question arises as to the rights of third persons, but the only question is whether one partner is entitled to his share of the partnership effects, in an action brought to settle and distribute the estate of a deceased partner.  No good reason can be assigned, or, at least, none has been suggested, why such a statute should defeat the recovery of his share by the living partner, where no third person is involved, but only the partners themselves in relation to transactions wholly *inter se*.  The intent and object of the statute was to require notice to be given to the business world of the facts required to be set out in the certificate, to the end that people dealing with a firm may be fully informed as to its membership, and know with whom they are trading, and what is the character of the firm, and the reliability and responsibility of those composing it.  An examination of the case of *Courtney v. Parker,* 173 N. C., 479, which construed the statute in relation to a sale of building material and the right of the plaintiffs, a partnership, which had not complied with the statute, to recover the price thereof, will show that this is true.  It is there said that "it is a police regulation to protect the general public, as heretofore stated, from fraud and imposition."  There was no sufficient reason for safeguarding the interests of the partners as between themselves, as there was for protecting the general public against deception, imposition, and fraud, so easly practiced, when it is kept in ignorance of the essential facts enumerated in the statute.  Granting that the case may come within the letter of the law, it certainly is not within its meaning and palpable design.  This assertion of title to property is not, therefore, met and answered by the rule that the law will not lend its aid in enforcing a claim founded on its own violation, as we have particularly stated, in *Marshall v. Dicks,* 175 N. C., 41; *McNeill v. R. R.,* 135 N. C., 733; *Vinegar Co. v. Hawn,* 149 N. C., 357.  Nor must the plaintiff necessarily show a violation of the law in stating his cause of action or in proving it, as in *Liquor Co. v. Johnson,* 161 N. C., 76; *Wittkowsky v. Baruch,* 127 N. C., 313; *King v. Winants,* 71 N. C., 469.

It must be borne in mind that the business of this partnership was not, in itself, illegal, nor was the prosecution of it. The partners, on the contrary, were engaged in a perfectly legitimate and lawful enterprise. It seems impossible to suppose for a moment that the Legislature, sagacious as it is, and endowed in the highest degree with practical wisdom and practical common sense, would enact a statute, which would do so much evil and so little good as to a clearly innocent and harmless undertaking. The language must be exceedingly plain and unmistakable to lead us to such a conclusion. But we have a recent decision upon the subject, *Jennette v. Coppersmith,* 176 N. C., 82, in which this Court, in referring to and reviewing *Courtney v. Parker, supra,* said: "While the Court felt constrained to give this construction, on the ground, chiefly, that the act was a police regulation designed and intended to protect the general public from fraud and imposition, under such an interpretation the act is of such highly penal character that it·should not be extended or held to include cases that do not come clearly within its provision."

In the *Jennette case* the firm name was "Jennette Bros. Co.," and the Court held that this was not an assumed name within the meaning of the statute, as would a purely fictitious name be. And more especially defining the words "assumed name," it was said by *Justice Hoke* to be one that "gives the impression of an act calculated to mislead or baffle inquiry," and further, that "the title of plaintiffs' firm, Jennette Bros. Company, being a partnership conducted under that name and style, giving as it did the true surname of its members, affording a reasonable and sufficient guide to correct knowledge of the individuals composing the firm, should not be considered an 'assumed' name within the meaning and purpose of the law." And yet, in that case, the statute requirement that all the names be set forth fully in the certificate was not observed. But we return to the original proposition, that the transactions here were strictly between the partners, and the mischief intended to be corrected by the statute does not exist in this case, and a compliance with its provisions was not essential, as the statute does not and was not intended to apply, the transaction not being inherently wrong, or calculated to mislead, or to baffle inquiry by the public. The Legislature would hardly enact a police regulation to protect partners as between themselves, under the circumstances disclosed in this record.

Frequently a statute imposes a penalty on the doing of an act without either prohibiting it or expressly declaring it illegal or void. In cases of this kind the decisions of the courts are not in harmony. By some courts it is held that an agreement founded on or for the doing of such penalized act is void (9 Cyc., 476, and note 2); in accordance with the view of *Lord Holt,* in an old case: "Every contract made for or about any

32—178

matter or thing which is prohibited and made unlawful by any statute is a void contract, though the statute itself doth not mention that it shall be so, but only inflicts a penalty on the offender, because a penalty implies a prohibition, though there are no prohibiting words in the statute." *Bartlett v. Vinor,* Carth., 251, 252. Other courts have held that if, for example, the penalty is imposed for the protection of the revenue, it may be presumed that the Legislature only desired to make it expensive to the parties in proportion as it is unprofitable to the revenue. Others have regarded the question as one of legislative intent, and declared the proper rule to be that the courts will look to the language of the statute, the subject-matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if from all these it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold and construe the statute accordingly. *Wheeler v. Hawkins,* 116 Ind., 515; *Dillon v. Allen,* 46 Iowa, 299; *Lindsey v. Rutherford,* 17 B. Mon., 245; *Coombs v. Emery,* 14 Me., 404; *Bowditch v. New England Mut. L. Ins. Co.,* 141 Mass., 292; *Lewis v. Welch,* 14 N. H., 294; *Ruckman v. Bergholz,* 37 N. J. L., 437; *Pratt v. Short,* 79 N. Y., 437; *Holt v. Green,* 73 Pa. St., 198; *Aiken v. Blaisdell,* 41 Vt., 655; *Neimeyer v. Wright,* 75 Va., 239 *Miller v. Ammon,* 145 U. S., 421; *St. Louis Nat. Bank v. Matthews,* 98 U. S., 621; *Barton v. Muir,* L. R., 6 P. C., 134.

As a general rule, a contract founded on an act forbidden by a statute under a penalty is void, although it be not expressly declared to be so, but it does not necessarily follow that the unlawfulness of the act was meant by the Legislature to avoid a contract made in contravention of it. The question is in a great measure one of legislative intent, and its determination depends, as in other cases, on the construction of the statute. *Niemeyer v. Wright,* 75 Va., 239. Such was the conclusion of another court of high authority. *Harris v. Runnels,* 12 How. (U. S.), 79, which Court notes a distinction between statutes to raise revenue and those which are made for the protection of the public from moral evils, and those, which it is known by experience, society must be guarded from by preventive legislation. The Court, following *Baron Parke's* opinion in *Cope v. Rowlands,* 2 M. & W., 149, says: "A statute containing a prohibition and a penalty makes the act which it punishes unlawful, and the same may be implied from a penalty without a prohibition. But it does not follow that the unlawfulness of the act was meant by the Legislature to avoid a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void. It is not necessary, however, that the reverse of that should be expressed in terms to exempt a contract from the rule. The exemption may be inferred from those

rules of interpretation to which, from the nature of legislation, all of it is liable when subjected to judicial scrutiny. That Legislatures do not think the rule one of universal obligation, or that upon grounds of public policy it should always be applied, is very certain. . . . It must be obvious, from such diversities of legislation, that statutes forbidding or enjoining things to be done, with penalties accordingly, should always be fully examined before courts should refuse to give aid to enforce contracts which are said to be in contravention of them."

This Court has lately applied the rule we have just stated, and with reference to a similar question, arising out of the construction of a town ordinance requiring sewer connections to be made, in *Hines v. Norcott*, 176 N. C., 123, where it was said: "The case of *Courtney v. Parker*, 173 N. C., 479, does not conflict with our decision, and it is not an authority in support of the defendant's contention. There the defendant had done the very thing which was, in express terms or by the clearest implication, forbidden by the statute, and which it was unlawful to do, and every time he made a sale in the same manner he did the same thing which the statute was intended to prohibit, and which it declared should be unlawful and a misdemeanor, punishable by fine and imprisonment. In other words, the statute declared that he should conduct his business in a certain way, and not otherwise, and that he should not conduct it at all 'unless' he complied with the provisions of the statute. He did not pursue the prescribed method, but the one denounced, and his act was therefore held to be illegal, and his contract tainted by it. That is not our case. There is nothing in the lease transaction which is immoral *per se,* and therefore it is our right to search out the intention of the council and the meaning of the ordinance, in the language of the latter, and discover, if we can, what was its purpose, and not destroy contracts, with perhaps disastrous results, unless we find that to have been the real meaning and object in view. *Courtney v. Parker, supra,* and cases cited therein. The ordinance does not, in terms or by implication, forbid the sale or leasing of premises having no sewer connections, but is restricted to the injunction that in certain instances the owner should make such connections under a penalty for his failure to do so. There is no inhibition in this contract against the making of such connections, and the owner is perfectly free to make them at any time. There is not even a reference to the matter, one way or another." It will be observed that we there construed the ordinance, which is nothing but a local statute operating in restricted territory, and ascertained the intention of the governing body, in order to declare whether the lease in that case was in conflict with it, or contravened its provisions to such an extent, or in such a way, as to render it void and of no effect.

But the question as to the construction of this enactment comes under another rule, which is that statutes in derogation of common law, or common right, are construed strictly. Black on Interp. of Laws, 367, says: "It is a rule generally observed (except where prohibited by statute) that acts of the Legislature made in derogation of the common law will not be extended by construction; that is, the Legislature will not be presumed to intend innovations upon the common law, and its enactments will not be extended, in directions contrary to the common law, further than is indicated by the express terms of the law, or by fair and reasonable implications from its nature or purpose or the language employed." In regard to this doctrine, it is said in 36 Cyc., p. 1177: "As the common law forms the basis of the Anglo-Saxon system of jurisprudence, and furnishes the rule of decision except so far as it has been changed by statute, the common law in regard to a particular matter is presumed to be in force until it affirmatively appears that it has been abrogated or modified by statute. Therefore, except in those jurisdictions where the rule has been changed by express enactment, all statutes in derogation of the common law are to be construed strictly. Where the statute not only effects a change in the common law, but is also in derogation of common right, it must be construed with especial strictness. Examples of such statutes are those which operate in restraint of personal liberty or civil rights, or the use and enjoyment of public highways; which grant or enlarge special privileges; which grant power to deprive persons of the ownership of property without their consent; which impose restrictions upon the control, management, use, or alienation of private property; which disturb vested rights in property or contracts; or which restrain the freedom of contract, the exercise of any trade or occupation, or the conduct of business. The rule to be applied in the construction of all such statutes is that they must not be deemed to extinguish or restrain private rights, unless it appears by express words or plain implication that it was the intention of the Legislature to do so." The statute now under our consideration is clearly penal, as it makes a violation of its provisions indictable and punishable by fine or imprisonment. Finally, the very structure of the statute shows a clear intent not to include a case of this kind where there is no dealing in trade with any outsider, or with any one apt to be misled or defrauded, and especially does the proviso to section 1 manifest this purpose.

Coming to the last question presented by the case, that is, the estoppel of the order relating to the sale of the intestate's personal effects privately, instead of at public sale after posting the required notices. The application to sell privately did not involve the issue of ownership, but only the question whether it was wise or expedient that the administra-

tor should be specially permitted to sell certain kinds of personal property mentioned in the statute (Rev., 64) at private sale for the reasons set forth in his application. There is no formal trial of the fact upon issues contemplated, as it is a question of fact, and the petition, while it describes the kind of property to be sold, as corn and oats, identifies it in no other way, except that the intestate owned some property of that general description, and he did, and property of that kind was actually sold. But it cannot be reasonably said that such an order estops the administrator to now assert that he owned individually an interest in the property sold. It can now consistently be claimed that the intestate had but an interest in the property sold, although it was sold as so much corn or oats. The sale of it in that way does not preclude the idea that he had only an interest in it, and that it was his share which was sold along with that of the administrator, the property being held jointly, and it being practically impossible, or, at least, inexpedient, to sell it otherwise. The question really involved in the proceeding, and the only one, was whether a sale made privately was better than one made publicly, as the property would bring a larger price. It is like the cases, where we have held, that the allegation, in a petition to sell lands for assets, of the existence of certain debts was not an estoppel, as to them or the amounts, the Court saying, in the case of *In re Gorham,* 177 N. C., 271, at p. 276, referring to and quoting from *Trust Co. v. Stone,* 176 N. C., 270, 272: "The judge held that the decrees were binding on the parties as to the amount of the debts as stated in the petition, but this was reversed on appeal, the Court saying: 'We do not concur with his Honor in the view taken by him of the question reserved, in respect to the effect of the decree giving the administratrix license to sell the land. That decree was an adjudication that it was necessary to sell, and is conclusive in favor of the title acquired by the purchaser, but it is not conclusive of the question of debt or no debt as against or in favor of creditors, or as against or in favor of the heirs.'" It is said in *Nobles v. Nobles,* 177 N. C., 243, at 247-248: "As a general rule, a judgment does not work an estoppel of record as between parties supposed to represent the same interest unless their rights and interests have been made the subject of inquiry and decision, nor in any event does an adversary judgment constitute an estoppel as to matters beyond the scope of the issues as presented and embraced in the pleadings," citing the following cases: *Weston v. Lumber Co.,* 162 N. C., 165; *Holloway v. Durham,* 176 N. C., 551; *Hobgood v. Hobgood,* 169 N. C., 485.

Two sorts of estoppel arise from the record of a judgment; first, from the record considered as a memorial or entry of the judgment; and, second, from the record considered as a judgment. As a memorial of the fact of the rendition of the judgment, the record imports absolute verity,

and may be impeached by no one, whether or not a party to the proceeding in which it was made. As a judgment, on the other hand, the record had the further effect of precluding a reëxamination into the truth of the matters decided; but in this aspect it is, as a rule, binding only upon the parties to the proceeding and their privies. This further and secondary effect of the record considered as a judgment is otherwise known as estoppel by judgment, the matters adjudicated being termed *res judicata.* 16 Cyc., 685.

"Estoppel by judgment is a bar which precludes the parties to an action to relitigate, after final judgment, the same cause of action or ground of defense, or any fact determined by the judgment." 16 Cyc., 680.

In the application for a private sale, the only question was, Should a sale be made? and no question of the precise ownership was presented. There was no plea or answer raising it, and the point now in dispute was not then before the Court. Bigelow on Estoppel (6 Carter's Ed.), 42-43. As said in the cases cited above, it made no difference what property was sold. The order was to sell whatever property belonging to the intestate there was, and of the kind described, at private sale, and it did not adjudge that any particular property belonged to him, and if any, how much, as it was not necessary to do so. It therefore comes to this: that in order for there to be a bar, or an estoppel, under the principle of *res judicata,* arising out of a former judgment *in personam* between the same parties or their privies, "it is required that the court which rendered it should have 'cognizance of the class of cases to which it belongs, and should have acquired jurisdiction of the parties and of the subject-matter, and this question of jurisdiction of the subject-matter is determined by the controversy between the parties as presented and disclosed in their pleadings.' This position, so stated by *Chief Justice Beasley,* in *Munday v. Vail,* 34 N. J. L., 418, affirmed in *Dodd v. Una,* 40 N. J. Eq., 672, was approved and applied here in *Hobgood v. Hobgood,* 169 N. C., 485-91; and, recognizing this as the true test, it is held in numerous and well considered cases here and elsewhere that such a judgment will conclude the parties as to all matters directly in issue, and as to all matters within the 'scope of the pleadings which are material and relevant, and were in fact investigated and determined at the hearing. *Propst v. Caldwell,* 172 N. C., 594; *Cropsy v. Markham,* 171 N. C., 44; *Coltraine v. Laughlin,* 157 N. C., 282; *Gillam v. Edmonson,* 154 N. C., 127; *Tyler v. Capeheart,* 125 N. C., 64; *Jordan v. Farthing,* 117 N. C., 188; *Fayerweather v. Ritch,* 195 U. S., 277; *Aurora City v. West,* 74 U. S., 103. When, however, a court, going beyond the scope of the pleadings, undertakes to settle and determine matters entirely foreign to the controversy between the parties as they have presented it,

the judgment, or that portion of it, does not bind, and may be treated as a nullity.' As held in *Munday v. Vail, supra*, 'A decree, which is entirely aside of the issue raised in the record is invalid, and will be treated as a nullity even in a collateral proceeding.' And in illustration of the same principle it was held here, in *Gillam v. Edmonson, supra*, 'That an estoppel of record will bind parties and privies as to matters in issue between them, but it does not conclude as to matters not involved in the issues, nor when they claim in a different right.' " This was said by *Justice Hoke*, for the Court, in *Holloway v. Durham*, 176 N. C., 550.

The charge of the judge was free from any error. There was no expression of opinion by him, and the exception as to his statement of the contentions is futile, unless the error in it, if any, was called to his attention, so that it could be corrected. *S. v. Summers*, 173 N. C., 775; *S. v. Martin, ib.*, 808.

There was evidence to support the verdict, and a nonsuit would have been improper.

No error.