Certiorari granted, September 25, 2012
Affirmed by Supreme Court, March 20, 2013

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

E.M.A., a minor, by and through
her Guardian ad Litem, William
W. Plyler; WILLIAM EARL
ARMSTRONG; SANDRA ARMSTRONG,

*Plaintiffs-Appellants,*

v.

LANIER M. CANSLER, in his official
capacity as Secretary of the North
Carolina Department of Health
and Human Services,

*Defendant-Appellee.*

No. 10-1865

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(5:07-cv-00037-RLV-DCK)

Argued: October 26, 2011

Decided: March 22, 2012

Before AGEE, DAVIS, and KEENAN, Circuit Judges.

Vacated and remanded by published opinion. Judge Davis
wrote the opinion, in which Judge Keenan joined. Judge Agee
wrote an opinion concurring in part, dissenting in part, and
concurring in the judgment.

## COUNSEL

**ARGUED:** William Bernard Bystrynski, KIRBY & HOLT, LLP, Raleigh, North Carolina, for Appellants. Belinda Anne Smith, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** C. Mark Holt, KIRBY & HOLT, LLP, Raleigh, North Carolina; Jeffrey T. Mackie, SIGMON, CLARK, MACKIE, HUTTON, HANVEY & FERRELL, PA, Hickory, North Carolina, for Appellants. Roy Cooper, North Carolina Attorney General, Raleigh, North Carolina, for Appellee.

---

## OPINION

DAVIS, Circuit Judge:

Under federal law, states participating in the Medicaid program are obligated (with some exceptions) to seek reimbursement from third-party tortfeasors for health care expenditures made on behalf of Medicaid beneficiaries who are tort victims. At the same time, however, states are prohibited (with some exceptions) from seeking reimbursement "from the personal property of" Medicaid beneficiaries themselves for health care expenditures made on behalf of those beneficiaries. But what if the injured Medicaid beneficiary obtains a judgment against (or enters into a settlement agreement with) the tortfeasor? Under such circumstances, what constraints are imposed as to how the state may satisfy its mandatory claim for reimbursement? In *Arkansas Department of Health & Human Services v. Ahlborn*, 547 U.S. 268 (2006), the Supreme Court provided considerable guidance in resolving this tension in the Medicaid law. The instant appeal requires us to apply the teachings of *Ahlborn* to the Medicaid program as it is administered in North Carolina.

The minor appellant, E.M.A., sustained serious injuries at birth due to the negligence of the medical professionals who

attended to her delivery. As a result of E.M.A.'s injuries, the North Carolina Department of Health and Human Services ("DHHS"), through the state Medicaid program, paid more than $1.9 million in medical and health care expenses on her behalf. Meanwhile, E.M.A., through her guardian *ad litem*, and her parents, Sandra and William Earl Armstrong, individually (hereafter "Appellants"), instituted a medical malpractice action in state court. In due course, they settled the action for a lump sum of approximately $2.8 million (a sum in excess of the total Medicaid expenditures of approximately $1.9 million but well below the full value of all the tort claims). The settlement agreement did not allocate separate amounts for past medical expenses and other damages.

DHHS subsequently asserted a statutory lien on the settlement proceeds pursuant to N.C. Gen. Stat. §§ 108A-57 and -59 (referred to herein as "the North Carolina third-party liability statutes"), which provide that North Carolina has a subrogation right to, and may assert a lien upon, the lesser of its actual medical expenditures or one-third of the Medicaid recipient's total recovery. Thus, under the circumstances described, where DHHS's actual medical expenditures are greater than one-third of the settlement funds, the North Carolina third-party liability statutes effect an unrebuttable presumption that the state is entitled to one-third of the total settlement proceeds recovered by E.M.A. and her parents. This amount, $933,333.33 (one-third of the $2.8 million lump-sum settlement), has been paid into the registry of the state court, where the funds have remained during the pendency of this action. The parties before us do not dispute the state's entitlement to *some* reimbursement from the lump-sum settlement, but they vigorously dispute the proper allocation of the portion of the settlement proceeds held in trust by the state court.

Appellants brought this action in federal district court against Lanier M. Cansler, in his official capacity as Secretary of DHHS, seeking declaratory and injunctive relief pursuant

to 42 U.S.C. § 1983. They sought to forestall payment of the amount claimed by DHHS on the basis of the provision of the federal Medicaid law known as the "anti-lien provision," 42 U.S.C. § 1396p. On cross-motions for summary judgment, the district court, relying in significant part on the reasoning of a majority opinion in a prior case by a divided Supreme Court of North Carolina which distinguished *Ahlborn* while sustaining the state statutory regime, granted summary judgment in favor of Appellee, Secretary Cansler. Appellants filed this timely appeal.

For the reasons set forth within, we disagree, respectfully, with the analysis of the Supreme Court of North Carolina, as adopted by the district court. Rather, in agreement with one of our sister circuit courts analyzing an analogous state law, we are persuaded that the unrebuttable presumption inherent in the one-third cap on the state's recovery imposed by the North Carolina third-party liability statutes is in fatal conflict with federal law. Accordingly, we vacate the judgment in favor of the Secretary and remand this action for further proceedings consistent with this opinion.

I

A

E.M.A. was born on February 25, 2000 with injuries that necessitated substantial medical treatment. As a result of the injuries she suffered at birth, E.M.A. is legally deaf and blind, and she is unable to sit, walk, crawl, or talk. Additionally, E.M.A. suffers from mental retardation and a seizure disorder. She requires between 12 and 18 hours of skilled nursing care per day. Sandra Armstrong, E.M.A.'s mother, applied for Medicaid benefits on behalf of E.M.A. on April 26, 2000. The North Carolina Medicaid program is administered by the Division of Medical Assistance ("DMA") of DHHS pursuant to N.C. Gen. Stat. § 108A-54 and 42 U.S.C. §§ 1396-1396v.

In the application for Medicaid coverage for E.M.A., Sandra Armstrong agreed

> to give back to the State any and all money that is received by me or anyone listed on this application from any insurance company for payment of medical and/or hospital bills for which the Medical Assistance program has or will make payment. In addition, I agree that all medical payments or medical support paid or owed due to a court order for me or anyone listed on this application must be sent to the State to repay past or current medical expenses paid by the State. This includes insurance settlements resulting from an accident. I further agree to notify the county department of social services if I or anyone listed on this application is involved in any accident.

J.A. 82, ¶ 2.

On February 21, 2003, E.M.A. and her parents filed a lawsuit in Catawba County Superior Court alleging claims for medical malpractice. The malpractice suit sought damages on behalf of E.M.A. for her physical and developmental injuries, lost wages, pain and suffering, and future medical expenses starting at her majority. Sandra and William Earl Armstrong sought damages for past medical expenses for E.M.A.'s care and treatment, medical expenses through E.M.A.'s eighteenth birthday, and damages for their own emotional distress.

After three years of litigation, the parties settled the medical malpractice case. Prior to consummating the settlement, Appellants were aware that DHHS had paid more than $1.9 million for the costs of E.M.A.'s medical care. Appellants contend that they gave notice of the settlement negotiations and of the mediation process to DHHS pursuant to Rule 4B of the North Carolina Rules for Mediated Settlement Confer-

ence, but no representative of DHHS ever participated in or attended the settlement discussions.[1]

On November 13, 2006, Judge Timothy Kincaid held a hearing in the Catawba County Superior Court to review the fairness and appropriateness of the settlement. Appellants allege they served DHHS with notice of the hearing, but no representative of DHHS appeared. The court approved the settlement, finding that it was fair and just, in the best interest of E.M.A., and in all respects reasonable and proper. The court likewise found the settlement to be fair in all respects as to Sandra and William Earl Armstrong, and that their individual claims had been resolved by the settlement, "including, but not limited to, claims for severe emotional distress and mental anguish and liability for past, present and future medical and life care expenses." J.A. 134. Judge Kincaid noted that the plaintiffs had alleged that "[E.M.A.] suffered severe and permanent injuries and that both parents . . . have incurred liability for past, present and future medical and life care expenses for treatment of [E.M.A.]," J.A. 133, and concluded that the sums set out in the Settlement Schedule were fair and just compensation for their respective claims, J.A. 135.

Notably, neither the parties to the settlement nor the court allocated the settlement funds among the distinct claims or categories of damages. To be sure, however, Judge Kincaid recognized that DHHS had asserted a lien against the proceeds of the settlement, but for reasons not addressed by the parties before us, he apparently was not asked and/or declined to adjudicate the proper amount of the DHHS lien. Rather, he found simply that "the amount of that lien needs to be determined in light of the U.S. Supreme Court decision in [*Ahlborn*]," J.A. 136, which had been decided approximately six months earlier during the pendency of the state medical malpractice litigation. Accordingly, the court ordered that the

---

[1]It is undisputed that DHHS had a right to intervene in the malpractice action but elected not to do so.

maximum potential lien amount, as set out in the Settlement Schedule and as provided in N.C. Gen. Stat. § 108A-57(a), should be paid into an interest bearing account in the Catawba County Clerk of Court's Office until such time as the actual amount of the DHHS lien was conclusively determined. Although the Settlement Schedule was filed under seal and is not part of the appellate record in this case, it is undisputed that the amount held in the Catawba County Clerk of Court's Office is $933,333.33, which represents one-third of the total lump-sum settlement paid to E.M.A. and her parents in resolution of the medical malpractice action.

B

On March 23, 2007, E.M.A. filed this suit in the United States District Court for the Western District of North Carolina under 42 U.S.C. § 1983 seeking declaratory and injunctive relief. She alleged a deprivation of her rights as secured by 42 U.S.C. § 1396p (the federal Medicaid anti-lien provision, discussed *infra*) and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV, § 1, cl. 2. In her complaint, E.M.A. requested a declaratory judgment finding that: (1) DHHS does not have a lien on the proceeds paid on her behalf in settlement of the medical malpractice action or, in the alternative, determining the amount of the lien; (2) the North Carolina third-party liability statutes are unconstitutional under the federal Supremacy Clause, U.S. Const. art. VI, cl. 2, to the extent the statutes allow DHHS to assert a lien on settlement funds paid in lieu of damages for claims other than medical expenses; and (3) DHHS be enjoined from enforcing the North Carolina third-party liability statutes in a manner that violates 42 U.S.C. §§ 1396-1396v, *Ahlborn*, and the Equal Protection Clause.[2]

---

[2]Appellants have abandoned their equal protection claim.

The Secretary filed certain preliminary motions, which the district court granted in part and denied in part, without prejudice. E.M.A.'s parents were joined as plaintiffs by consent. Thereafter, the district court stayed the action pending final review in the North Carolina Supreme Court of *Andrews v. Haygood*, 669 S.E.2d 310 (N.C. 2008), *cert. denied sub nom. Brown v. North Carolina Department of Health and Human Services*, 129 S. Ct. 2792 (2009), a state-court appeal challenging the enforceability of the North Carolina third-party liability statutes under circumstances materially indistinguishable from the circumstances present in this case.

After the North Carolina Supreme Court sustained the North Carolina third-party liability statutes in *Andrews*, 669 S.E.2d 310, the parties filed cross-motions for summary judgment. The district court concluded that, based upon the North Carolina Supreme Court's reasoning in *Andrews* and its own independent analysis, the North Carolina third-party liability statutes are consistent with federal Medicaid law as interpreted in *Ahlborn*. Having reached this conclusion of law and finding no genuine dispute of material fact remaining, the district court denied E.M.A.'s motion for summary judgment, granted the Secretary's motion for summary judgment, and dismissed E.M.A.'s case with prejudice, thereby entitling the Secretary to $933,333.33, the full amount held in trust by the state court. E.M.A., through her guardian *ad litem*, together with her parents, timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

The outcome of the instant appeal turns upon our application of federal Medicaid law, as interpreted by the Supreme Court in *Ahlborn*, to North Carolina's statutory scheme for third-party liability, in light of the particular undisputed facts of this case involving a lump-sum personal injury settlement recovered by a minor child. We review *de novo* the district court's grant of summary judgment. *Purdham v. Fairfax Cnty.*

*Sch. Bd.*, 637 F.3d 421, 426 (4th Cir. 2011). Similarly, "[t]he district court's analysis of the statutes in the instant case presents questions of law which we review *de novo*," *WLR Foods, Inc. v. Tyson Foods, Inc.*, 65 F.3d 1172, 1178 (4th Cir. 1995), *cert. denied*, 516 U.S. 1117 (1996), including, of course, its analysis of the Appellants' Supremacy Clause challenge. *See Sheehan v. Peveich* (*In re Peveich*), 574 F.3d 248, 252 (4th Cir. 2009).

E.M.A. and her parents argue on appeal that DHHS's lien against E.M.A.'s portion of the settlement proceeds violates federal Medicaid law because the lien encumbers funds that are not payment for medical expenses already incurred. Although the medical malpractice settlement was not allocated among categories of damages, E.M.A. asserts that her portion of the proceeds necessarily does not include reimbursement for medical care because a minor has no cause of action to recover past medical expenses under North Carolina common law. In the alternative, Appellants argue that "the proportional analysis undertaken in *Ahlborn* should be applied to this case," and that this court should vacate and remand for an evidentiary hearing to determine the proper amount of the state's lien. Br. of Appellants at 25.

The Secretary responds, citing to the North Carolina Supreme Court's majority opinion in *Andrews*, that the district court correctly held that the North Carolina third-party liability statutes, N.C. Gen. Stat. §§ 108A-57 and -59, are consistent with federal Medicaid law as construed in *Ahlborn*. The Secretary further asserts that, having made this determination, the district court was not required to rule on the applicability of North Carolina common law to the federal and state statutes because the statutes abrogate the common law. Finally, the Secretary argues that *Ahlborn* does not support E.M.A.'s alternative theory of proportional analysis for reducing the state's Medicaid lien.

For the reasons set forth herein, although we agree that common law principles play no role in the circumstances

presented in this case, we are persuaded that Appellants have the better of the argument with respect to federal law as explicated in *Ahlborn*. E.M.A.'s argument that DHHS cannot assert a lien against her portion of the settlement funds because a minor cannot recover for past medical expenses under North Carolina common law fails because the state statutes at issue clearly abrogate the common law. Nevertheless, we shall vacate the judgment because the North Carolina third-party liability statutes, N.C. Gen. Stat. §§ 108A-57 and -59, as applied in this case, fail to comply with federal Medicaid law as interpreted by the Supreme Court in *Ahlborn*. As the unanimous *Ahlborn* Court's decision makes clear, *federal Medicaid law limits North Carolina's recovery to settlement proceeds representing payment for medical expenses*. In the event of a lump-sum settlement, as in this case, the sum certain allocable to medical expenses must be determined, in the absence of a stipulation by the affected parties, by judicial determination or some similar adversarial process, before the state may recoup its Medicaid outlays. *Accord Tristani ex rel. Karnes v. Richman*, 652 F.3d 360, 377-78 (3d Cir. 2011) (interpreting Pennsylvania law).

III

A

We begin with a summary of the relevant provisions of federal law. The Medicaid program, launched in 1965 with the enactment of Title XIX of the Social Security Act, as added, 79 Stat. 343, 42 U.S.C. §§ 1396-1396v, is a cooperative program by which the federal government pays a percentage of the costs a state incurs for medical care for individuals who cannot afford to pay their own medical costs. *Ahlborn*, 547 U.S. at 275. Although states are not required to provide Medicaid assistance, all 50 states currently do. *Id.* In exchange for receiving federal financial support for state-run Medicaid programs, states must comply with federal Medicaid laws, including statutory third-party liability requirements, 42

U.S.C. §§ 1396a(a)(25)(A), (B), (H); 1396k, and anti-lien provisions, *id.* §§ 1396a(a)(18), 1396p. In order to comply with requirements in federal Medicaid law, North Carolina has enacted its own third-party liability statutes, comprised of an assignment statute, N.C. Gen. Stat. § 108A-59, and a subrogation statute, N.C. Gen. Stat. § 108A-57. *See infra* pp. 13-14.

States providing Medicaid assistance must comply with several provisions concerning third-party liability. For instance, states are required to "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the [State's Medicaid] plan." 42 U.S.C. § 1396a(a)(25)(A). In addition to this identification requirement, the state agency administering the Medicaid program (here DHHS) must seek reimbursement for medical assistance to the extent of such legal liability. *Id.* § 1396a(a)(25)(B). In order to secure its reimbursement from liable third parties, the state must,

> to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, [have] in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services.

*Id.* § 1396a(a)(25)(H). Consistent with this provision, as a condition to receiving state medical assistance, individuals are required

> to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this title [42 USCS §§ 1396 et seq.] and on whose behalf the individual has the legal author-

ity to execute an assignment of such rights, to sup-
port (specified as support for the purpose of medical
care by a court or administrative order) and to pay-
ment for medical care from any third party.

*Id.* § 1396k(a)(1)(A). Federal Medicaid law further provides
that "any amount collected by the State under an assignment
made under the provisions of this section shall be retained by
the State as is necessary to reimburse it for medical assistance
payments made on behalf of" the Medicaid recipient. *Id.*
§ 1396k(b). Any funds remaining after the state and federal
Medicaid programs are reimbursed are then paid to the recipi-
ent. *Id.*

Although participating states are required under federal
Medicaid law to seek recovery from liable third parties, as set
forth above, "the federal statute places express limits on the
State's powers to pursue recovery of funds it paid on the
recipient's behalf." *Ahlborn*, 547 U.S. at 283. These limita-
tions are contained in 42 U.S.C. §§ 1396a(a)(18) and 1396p.
Section 1396a(a)(18) provides that a state plan for medical
assistance must comply with § 1396p, which in turn prohibits
states from imposing liens against, or seeking recovery of
benefits paid from, a Medicaid recipient. Subsection 1396p(a)
prohibits imposition of a lien "against the property of any
individual prior to his death on account of medical assistance
paid or to be paid on his behalf under the State plan." Subsec-
tion 1396p(b) further provides that "no adjustment or recov-
ery of any medical assistance correctly paid on behalf of an
individual under the State plan may be made."[3]

The Supreme Court has characterized the third-party liabil-
ity provisions in federal Medicaid law as an exception to the
anti-lien provisions, stating that "[t]o the extent that the forced
assignment [of payments that constitute reimbursement for

---

[3]While there are a few exceptions to the prohibitions in 42 U.S.C.
§§ 1396p(a) and (b), these exceptions are not relevant to this case.

medical expenses] is expressly authorized in §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision." *Ahlborn*, 547 U.S. at 284 (citing *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 383-85, & n.7 (2003)). At the same time, the Supreme Court has emphasized that this exception is strictly limited — a state cannot force assignment of, or place a lien on, any property that does not constitute reimbursement for medical expenses. *Id.* at 284-85 ("[T]he exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies.").

B

Next, we outline the state law provisions that are relevant to this case. As noted above, North Carolina participates in the federal Medicaid program, and DHHS is the North Carolina regulatory body charged with establishing and administering the Medicaid program throughout the state in accordance with Title XIX of the federal Social Security Act, 42 U.S.C. §§ 1396-1396v. N.C. Gen. Stat. § 108A-54. In order to comply with the federal third-party liability requirements discussed *supra*, North Carolina has enacted an assignment statute, *id.* § 108A-59, and a subrogation statute, *id.* § 108A-57. Section 108A-59(a) provides that, "[n]otwithstanding any other provisions of the law, by accepting medical assistance, the recipient shall be deemed to have made an assignment to the State of the right to third party benefits, contractual or otherwise to which [the recipient] may be entitled." Implementation of the recipient's statutory assignment is governed by § 108A-57(a), the subrogation statute, which provides:

> Notwithstanding any other provisions of the law, to the extent of payments under this Part, the State, or the county providing medical assistance benefits, shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of this assis-

tance, or of the beneficiary's personal representative, heirs, or the administrator or executor of the estate, against any person . . . Any attorney retained by the beneficiary of the assistance shall, out of the proceeds obtained on behalf of the beneficiary by settlement with, judgment against, or otherwise from a third party by reason of injury or death, distribute to the Department the amount of assistance paid by the Department on behalf of or to the beneficiary, as prorated with the claims of all others having medical subrogation rights or medical liens against the amount received or recovered, but the amount paid to the Department shall not exceed one-third of the gross amount to be retained or recovered.

Accordingly, under the state's third-party liability statutes, North Carolina has a subrogation right to, and may assert a lien upon, the lesser of its actual medical expenditures or one-third of the Medicaid recipient's total recovery.[4] *See id.*

---

[4]As the Third Circuit has pointed out, *see Tristani ex rel. Karnes v. Richman*, 652 F.3d 360, 368 n.10 (3d Cir. 2011), *Ahlborn* does not flatly hold that statutory liens such as those created by North Carolina law are permissible. Rather, *Ahlborn* assumed, without deciding, the propriety of such laws. *See id.* ("To date, no federal appellate court has ruled on the validity of Medicaid liens limited to medical costs. Numerous district courts and state appellate courts, however, have assumed that such liens are valid in the wake of *Ahlborn* . . . . Although these decisions have permitted the use of Medicaid liens limited to medical costs, the majority of them have not clearly articulated their rationale for doing so. Indeed, some courts appear to be under the misapprehension that the Supreme Court held such liens to be permissible in *Ahlborn*."); *see also id.* at 379 n.1 (Pollak, D.J., sitting by designation, dissenting) ("As the majority recognizes, the Supreme Court's decision in *Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268, 280 n.9 (2006), assumed without deciding that 'a State can . . . requir[e] an "assignment" of part of, or plac[e] a lien on, the settlement that a Medicaid recipient procures on her own.'"). Appellants have not asserted that the North Carolina lien statute is wholly unenforceable. They limit their challenge to the unrebuttable presumption arising from the statutory one-third provision.

With commendable candor, the Secretary concedes that the statutory presumption that the state's recovery of one-third of an unallocated lump-sum tort settlement is fair and appropriate rests on nothing more than the state's notion of "how attorneys and insurance adjusters typically value tort cases." *See* Br. of Appellee at 16 (citing and quoting Dorsey D. Ellis, Jr., *Fairness and Efficiency in the Law of Punitive Damages*, 56 Cal. L. Rev. 1, 58 n.248 (1982) ("[T]hree times the special damages is often used as a rule of thumb for settling personal injury claims. *See* H. Ross, *Settled Out of Court* 108 (1970).")). The question posed by this appeal is whether the state's mere interest in "efficiency" is sufficient to satisfy the federal anti-lien provision. We hold that it is not.

## C

### (1)

The interplay among the above-described federal and state legal principles creates a measure of tension. In *Ahlborn*, the Supreme Court reconciled seemingly conflicting legal standards when it considered whether an Arkansas third-party liability statute permitting the state to claim a right to the *entirety* of the costs it paid on a Medicaid recipient's behalf, regardless of whether that amount exceeded the portion of the recipient's judgment or settlement representing past medical expenses, violated federal Medicaid law. 547 U.S. at 278. In an opinion by Justice Stevens for a unanimous Court, *Ahlborn* held that Arkansas' assertion of a lien on a Medicaid recipient's tort settlement in an amount exceeding the stipulated medical-expenses portion was not authorized by federal Medicaid law; to the contrary, the state's attempt to do so was affirmatively prohibited by the general anti-lien provision in 42 U.S.C. § 1396p. *Id.* at 292.

For the purposes of our analysis in the instant appeal, the facts of *Ahlborn* are highly instructive. Following Heidi Ahlborn's car accident with allegedly negligent third parties, the

Arkansas Department of Health and Human Services ("ADHHS")[5] determined that she was eligible for Medicaid and paid providers $215,645.30 on her behalf. *Id.* at 273. She filed a state-court suit against the alleged tortfeasors seeking damages for past medical costs and for other items, including pain and suffering, loss of earnings and working time, and permanent impairment of her future earning ability. *Id.* ADHHS intervened in Ahlborn's lawsuit to assert a lien on the proceeds of any third-party recovery she might obtain. *Id.* at 274. The case was settled for a lump sum of $550,000, which was not allocated between her various claims. *Id.* ADHHS did not participate or ask to participate in the settlement negotiations, and did not seek to reopen the judgment after the case was dismissed, but did assert a lien against the settlement proceeds for the full amount it had paid for Ahlborn's care. *Id.*

Ahlborn filed a declaratory judgment action in federal district court seeking a declaration that the state's lien violated federal law insofar as its satisfaction would require depletion of compensation for her injuries other than past medical expenses. *See Ahlborn v. Ark. Dep't of Human Servs.*, 280 F. Supp. 2d 881 (E.D. Ark. 2003). Notably, the parties stipulated that the settlement amounted to approximately one-sixth of the reasonable value of Ahlborn's claim and that, if her construction of federal law was correct, ADHHS would be entitled to only the prorated portion of the settlement that constituted reimbursement for medical payments made ($35,581.47, or one-sixth of $215,645.30, the full amount paid by ADHHS for her medical expenses related to the car accident). *Id.* at 883.

Ruling on cross-motions for summary judgment, the district

---

[5]While the State's petition for certiorari in *Ahlborn* was pending in the Supreme Court, the Arkansas Department of Human Services changed its name to "Department of Health and Human Services." Since the Supreme Court's decision, the agency has reverted to its original name.

court held that under Arkansas law, which it concluded did not conflict with federal law, Ahlborn had assigned to ADHHS her right to any recovery from the third-party tortfeasors to the full extent of Medicaid's payments for her benefit. *Id.* at 888. Accordingly, ADHHS was entitled to a lien in the full amount of $215,645.30. The Eighth Circuit reversed, holding that ADHHS was entitled only to that portion of the settlement that represented payments for medical care. *Ahlborn v. Ark. Dep't of Human Servs.*, 397 F.3d 620, 628 (8th Cir. 2005). ADHHS sought further review in the Supreme Court, which granted *certiorari* and affirmed the Eighth Circuit. *Ahlborn*, 547 U.S. at 292.

The Supreme Court held that Arkansas' third-party liability lien attached only to the portion of Ahlborn's settlement that was designated by stipulation for past medical expenses paid by Medicaid, or $35,581.47. *Id.* The Court found that the remainder of ADHHS's claim could not be asserted against the balance of the settlement proceeds. *Id.* at 280-81. The Court reasoned that the anti-lien provisions in the federal Medicaid statutes, 42 U.S.C. §§ 1396a(18) and 1396p, must be interpreted in view of 42 U.S.C. §§ 1396a(a)(25) and 1396k(a), which provide that states shall require individuals, as a condition to receiving state medical assistance, to assign the state any rights the individual may have "to payment for medical care from any third party," 42 U.S.C. § 1396k(a)(1)(A). *Id.* at 283-84. The Court explained that

> there is no question that the State can require an assignment of the right, or a chose in action, to receive payments for medical care . . . The State can also demand . . . that the recipient "assign" in advance any payments that may constitute reimbursement for medical costs . . . As long as the assignment rights are authorized under 42 U.S.C. §§ 1396a(a)(25) and 1396k(a), such assignments are considered exceptions to the anti-lien provision.

*Id.* at 284. The Court concluded that the federal third-party liability provisions require an assignment of no more than the right to recover the portion of the settlement proceeds which are designated for past medical bills paid by Medicaid, *id.* at 282, and that the federal anti-lien provision prohibits state Medicaid programs from asserting a third-party liability claim against a Medicaid beneficiary's settlement or judgment for personal injury damages other than medical expenses, *id.* at 286.

(2)

In *Andrews*, 669 S.E.2d 310, upon which the district court below heavily relied, the North Carolina Supreme Court rejected, by a 4-3 vote, a Supremacy Clause challenge to N.C. Gen. Stat. §§ 108A-57 and -59, concluding over a vigorous dissent that the North Carolina third-party liability statutes did not run afoul of the Supreme Court's interpretation of federal Medicaid law in *Ahlborn*. We believe it useful to review in some detail the course of legal developments in the state courts.

In *Ezell v. Grace Hospital, Inc.*, 623 S.E.2d 79 (N.C. Ct. App. 2005), a pre-*Ahlborn* case, the North Carolina Court of Appeals held that § 108A-57(a) requires reimbursement only to the extent of the third party's legal liability for injuries resulting in medical care paid by Medicaid, effectively vitiating the impact of the one-third-of-settlement provision. 623 S.E.2d at 83. Judge Steelman concurred in part and dissented in part, reasoning that "[DHHS's] right of subrogation under N.C. Gen. Stat. § 108A-57(a) is broad rather than narrow," and finding that the state was entitled to full satisfaction of its lien under North Carolina law. *Id.* at 63-64 (Steelman, J., concurring in part and dissenting in part) (concluding that DHHS was subrogated to the entire amount of the settlement, subject only to the one-third limitation found in § 108A-57(a), irrespective of whether some of the settlement amount was

intended to account for pain and suffering and not medical damages).

Judge Steelman's dissent provided an automatic appeal to the North Carolina Supreme Court under N.C. R. App. P. 14(b)(1), and eventually served as the basis for a summary reversal when, on appeal, the North Carolina Supreme Court reversed the Court of Appeals and adopted Judge Steelman's dissent by per curiam opinion. *Ezell v. Grace Hosp., Inc.*, 631 S.E.2d 131 (N.C. 2006), *rev'g per curiam for reasons stated in the dissenting opinion*, 623 S.E.2d 79 (N.C. Ct. App. 2005). Curiously, although the North Carolina Supreme Court decided *Ezell* on June 30, 2006, it made no mention of *Ahlborn*, which the United States Supreme Court had decided two months earlier on May 1, 2006. Moreover, on December 14, 2006, the North Carolina Supreme Court summarily denied a petition for rehearing in *Ezell* pursuant to N.C. R. App. P. 31, which set out arguments based on *Ahlborn*. *Ezell v. Grace Hosp., Inc.*, 641 S.E.2d 4 (N.C. 2006).

Then, not long afterwards, in *Andrews v. Haygood*, 655 S.E.2d 440 (N.C. Ct. App. 2008), the North Carolina Court of Appeals once again considered whether, in an action to determine the proper amount of a Medicaid lien on a medical malpractice settlement, the trial court erred in concluding that the North Carolina Supreme Court's decision in *Ezell* was controlling, and the United States Supreme Court's decision in *Ahlborn* was not. *Andrews*, 655 S.E.2d at 441-42. The intermediate appellate court concluded that *Ezell* was binding, *id.* at 442, and that since the North Carolina Supreme Court decided *Ezell* after *Ahlborn* was decided, and subsequently denied the petition for rehearing, the North Carolina Supreme Court had understood *Ahlborn* to have no effect on North Carolina's third-party liability statutes, *id.* at 443. The North Carolina Court of Appeals reasoned that, "[although we recognize that the Arkansas statute discussed in *Ahlborn* is similar to [N.C. Gen. Stat. § 108A-57(a)], it is well settled that the construction of the statutes of a state by its highest courts is to be

regarded as determining their meaning." *Id.* (internal citations and quotation marks omitted).

Judge Wynn, then a member of the North Carolina Court of Appeals, disagreed with the majority in *Andrews*, concluding that the North Carolina Supreme Court had not yet squarely answered the question presented in the case, and therefore "certif[ied] by dissent for a decision on the issue of whether the amount of State Division of Medical Assistance's subrogation on a Medicaid recipient's settlement is controlled by the United States Supreme Court's decision in [*Ahlborn*]." *Id.* at 444 (Wynn, J., dissenting). Judge Wynn noted that the state supreme court's reversal of the North Carolina Court of Appeals' decision in *Ezell* was explained only as "for the reasons stated in the dissenting opinion," that the dissenting opinion adopted by the supreme court had neither considered nor mentioned *Ahlborn*, and that the Supreme Court denied the motion for rehearing in *Ezell* with one word: "Denied." *Id.* (internal citations and quotation marks omitted).

Judge Wynn's dissent further emphasized that "the North Carolina statute at issue in [*Andrews*] is materially indistinguishable from the Arkansas statutory provisions found by a unanimous United States Supreme Court in *Ahlborn* to be pre-empted by federal law." *Id.* Judge Wynn reasoned,

> The principal difference between the North Carolina and Arkansas statutes is that the latter provides no ceiling or limit on the amount of recovery allowed to the ADHS; rather, the statute explicitly stated that ADHS was entitled to recover the full amount of the benefits paid to the recipient . . . . North Carolina, by contrast, allows DMA to take at most one-third of the gross amount of the settlement, regardless of whether that fully satisfies the amount paid in medical benefits . . . . Nevertheless, the basic thrust of the statutes is the same: under both, the State has an automatic lien on the full amount of any settlement

with a third party reached by a Medicaid settlement, regardless of what expenses or damages those funds are designated to compensate.

*Id.* at 445. Accordingly, Judge Wynn concluded that "the Arkansas statute — and likewise, our North Carolina statute — conflicts with federal Medicaid statutes by allowing the State to recover from a recipient settlement funds that were for purposes other than medical expenses." *Id.* He explained that because the settlement at issue in *Andrews*, unlike the settlement in *Ahlborn*, was not allocated as to particular claims, "the holding of *Ahlborn* dictates that the trial court must hold an evidentiary hearing as to what portion of the settlement is designated for medical expenses prior to determination of the amount of repayment to be made to DMA." *Id.* at 446.

Upon further appellate review, the North Carolina Supreme Court considered "whether the statutory framework governing the State's subrogation claim for medical expenses on a Medicaid recipient's tort claim settlement complies with federal Medicaid law as interpreted by the Supreme Court of the United States in [*Ahlborn*]." *Andrews*, 669 S.E.2d at 311. The appellant trustee of the settlement account argued that, absent an agreement between the parties, federal law requires a judicial determination of the portion of a tort claim settlement that represents the recovery of medical expenses. *Id.* at 312. In response, the state contended that the statutory one-third limiting provision complies with *Ahlborn*'s interpretation of federal Medicaid law, and that judicial apportionment of medical expenses from the settlement was therefore not required. *Id.* The North Carolina Supreme Court agreed with the state and affirmed the Court of Appeals, stating that "[b]ecause *Ahlborn* does not mandate a specific method for determining the medical expense portion of a plaintiff's settlement, we uphold North Carolina's reasonable statutory scheme." *Id.* at 311.

Thus, when it finally confronted the issue of *Ahlborn*'s effect on the North Carolina third-party liability statutes, the

North Carolina Supreme Court read *Ahlborn* narrowly and concluded that it "controls [only] when there has been a prior determination or stipulation as to the medical expense portion of a plaintiff's settlement. In those cases, the State may not receive reimbursement in excess of the portion so designated." *Id.* at 313. The court further emphasized that "the *Ahlborn* holding, limited by the parties' stipulations, did not require a specific method for determining the portion of a settlement that represents the recovery of medical expenses." *Id.* Noting that *Ahlborn* recognized that some states have adopted "special rules and procedures" for allocating tort settlements under such circumstances, but ultimately expressed no view on the matter, the *Andrews* court determined that "*Ahlborn* thus does not mandate a judicial determination of the portion of a settlement from which the State may be reimbursed for past medical expenses. Instead, the Supreme Court left to the States the decision on the measures to employ in the operation of their Medicaid programs." *Id.* (citing *Ahlborn*, 575 U.S. at 288 n.18) (internal quotation marks omitted).

Applying this interpretation of *Ahlborn*, the North Carolina Supreme Court majority found that "the one-third limitation of section 108A-57(a) thus comports with *Ahlborn* by providing a reasonable method for determining the State's medical reimbursements, which it is required to seek in accordance with federal Medicaid law." *Id.* at 314 (citing 42 U.S.C. § 1396a(a)(25)(A)-(B)). The United States Supreme Court subsequently denied the plaintiff's petition for *certiorari*. *See Brown*, 129 S. Ct. 2792.

In her dissenting opinion in *Andrews*, Justice Hudson agreed with the majority that *Ahlborn* does not mandate a specific method for determining the medical expense portion of a plaintiff's settlement, but emphasized that the *Ahlborn* Court nevertheless did explicitly hold that a state may not violate the anti-lien provisions of 42 U.S.C. §§ 1396a(a)(18) and 1396p by requiring a Medicaid recipient to reimburse it out of settlement funds designated for (or otherwise properly alloca-

ble to) purposes other than medical care. *Id.* at 314 (Hudson, J., dissenting, joined by JJ. Brady and Timmons-Goodson) (internal citations and quotation marks omitted). Justice Hudson ultimately concluded, however, that "the terms of the settlement [in *Andrews*] provide[d] insufficient detail to allow [the *Andrews* court] to determine whether the application of N.C. Gen. Stat. § 108A-57(a) would violate the anti-lien provisions of the federal Medicaid statutes, pursuant to the holding in *Ahlborn*." *Id.*; *see also id.* at 317 ("[A]pplication of the bright-line rule articulated by the majority in a case like this one, in which there has been no allocation, could allow precisely the result that is explicitly barred by *Ahlborn*.").

(3)

In the instant case, the district court recognized that *Andrews* was not binding upon it, but adopted the North Carolina Supreme Court's legal analysis and holding that the state's third-party liability statutes comport with federal Medicaid law and *Ahlborn*. *Armstrong v. Cansler*, 722 F. Supp. 2d 653, 655-58 (W.D.N.C. 2010). The district court agreed with the *Andrews* court's determination that the Supreme Court's holding in *Ahlborn* was "limited to a proscription against the State receiving reimbursement in excess of the portion *expressly stipulated* as recovery for medical expenses in a Medicaid recipient's settlement with a third party." *Id.* at 656 (emphasis added). The district court further agreed with the *Andrews* court's "infer[ence] that a State may adopt a statutory method for [determining the portion of a settlement that represents payment for medical expenses] in the absence of prior judicial allocation," such as the one-third limitation in N.C. Gen. Stat. § 108A-57(a). *Id.*

The district court then undertook its own independent analysis of the North Carolina third-party liability statutes, and thereby confirmed its conclusion that there is no conflict between the state's third-party liability scheme and federal law. *Id.* at 656-58. The district court determined that North

Carolina has complied with the federal requirements that it "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the [Medicaid] plan" and "seek reimbursement for assistance to the extent of such legal liability" by enacting the State Plan for Medical Assistance, which includes an assignment statute, N.C. Gen. Stat. § 108A-59, and a subrogation statute, N.C. Gen. Stat. § 108A-57. *Id.* at 657 (quoting 42 U.S.C. § 1396a(a)(25)(A)-(B)). The district court further reasoned that, by preventing the state from recovering more than one-third of a Medicaid recipient's settlement in the absence of judicial allocation, regardless of whether the state in fact provided more assistance, the North Carolina statutory scheme avoids the conflict at issue in *Ahlborn*. *Id.* (finding that the lesser of the state's past medical expenditure or one-third of the recipient's total recovery "essentially defines" the portion of the settlement that represents payment for medical expenses in cases involving a lump-sum settlement) (internal citation and quotation marks omitted). Unlike the Arkansas statute at issue in *Ahlborn*, the district court noted, the North Carolina statute provides a reasonable means of calculating the portion of the settlement agreement representing medical expenses, and then forbids the state from imposing a lien on the remainder of the settlement. *Id.* Finally, the district court noted that an intermediate appellate court in Florida had recently upheld Florida's nearly identical statutory scheme, which imposes a fifty-percent cap on the portion of a Medicaid recipient's award from a third-party tortfeasor that is recoverable by the state where the parties have not allocated medical costs, on the basis that the state's stipulation concerning the portion of the settlement proceeds attributable to medical expenses was central to the Supreme Court's reasoning in *Ahlborn*. *Id.* at 658 (citing *Russell v. Agency for Health Care Admin.*, 23 So. 3d 1266 (Fla. 2d Dist. Ct. App. 2010)).

## IV

## A

E.M.A.'s primary argument on appeal is that DHHS's lien on her settlement proceeds violates the federal anti-lien statute, 42 U.S.C. § 1396p, because she did not recover for past medical expenses.[6] E.M.A. contends that although her lump-sum settlement was not allocated between various claims (either by stipulation or judicial determination), her recovery necessarily does not include reimbursement for past medical expenses because a minor has no cause of action for past medical expenses under North Carolina common law. *See Vaughan v. Moore*, 316 S.E.2d 518, 520 (1988). Notably, although E.M.A. asserted this argument in her motion for summary judgment, the district court made no mention of this issue in its opinion. The Secretary contends that "[t]he relevant federal and state statutes applicable to Medicaid recipients abrogate the common law and establish the basis for DHHS to recover a portion of the funds paid for medical services provided to the minor child." Br. of Appellee at 8.

---

[6]In connection with their contention that under North Carolina law a minor lacks a cause of action for the costs of medical care, Appellants contend that the Superior Court allocated the settlement proceeds between E.M.A. and her parents, with E.M.A. receiving 88 percent of the total and her parents receiving the remaining 12 percent. Consequently, they contend, the amount of North Carolina's recoverable reimbursement is capped at one-third of the 12 percent of the lump-sum settlement awarded to Sandra and William Earl Armstrong.

The alleged apportionment of 12 percent to Sandra and William Earl Armstrong is not evident from the court's order, however, and the Secretary takes issue with Appellants' characterization. *See* Br. of Appellee at 7 (stating that "[appellants'] assertion contradicts the plain language of the order which provides that the funds be paid either to Medicaid or to the minor plaintiff's special needs trust. The record does not support [appellant]s' new apportionment theory."). In the view we take of the case, we need not further explore this aspect of the parties' contentions.

Neither the federal law nor the state law at issue in this case mentions the Medicaid beneficiary's age or minority status in setting forth third-party liability and assignment requirements. Indeed, the North Carolina assignment statute provides that "*[n]othwithstanding any other provisions of the law*, by accepting medical assistance, *the recipient* shall be deemed to have made an assignment to the State of the right to third party benefits, . . . to which he may be entitled." N.C. Gen. Stat. § 108A-59(a) (emphases added). Similarly, the North Carolina subrogation statute provides that "*[n]otwithstanding any other provisions of the law*, to the extent of payments under this Part, the State, or the county providing medical assistance benefits, shall be subrogated to all rights of recovery, contractual or otherwise, of *the beneficiary* of this assistance . . ." N.C. Gen. Stat. § 108A-57(a) (emphases added). Thus, with respect to E.M.A., who is both a "recipient" and "beneficiary" of medical assistance, the North Carolina third party liability statutes, N.C. Gen. Stat. §§ 108A-57(a), 59(a), by their plain language abrogate the common law rule that a minor cannot recover for medical expenses. *See Campbell v. N.C. Dep't of Human Resources*, 569 S.E.2d 670, 672 (N.C. Ct. App. 2002) (finding that a minor is a "recipient" of medical assistance under N.C. Gen. Stat. § 108A-25(5), which defines "recipient" as "a person to whom, or on whose behalf, assistance is granted under this Article," and a "beneficiary" of medical assistance under N.C. Gen. Stat. § 108A-57, pursuant to the plain and definite meaning of the term as commonly used); *see also id.* ("[P]laintiff cites no authority, and we find none, to support his contention that a beneficiary in the meaning of § 108A-57, or a recipient in the meaning of § 108A-59, must be one who receives a direct cash payment or relief from debt, or who has the legal right to bring suit for medical benefits.").

The North Carolina Court of Appeals considered a distinct but analogous argument in *Ezell*, 623 S.E.2d 79, in which one of the issues before the court on appeal was whether the trial court committed reversible error in its application of common

law principles of equity to the state's right of subrogation under N.C. Gen. Stat. § 108A-57(a). 623 S.E.2d at 81. The court held that § 108A-57(a) abrogates the equitable principles of common law. *Id.* at 81-82. The court reasoned that

> [i]n matters of statutory construction, this Court must ascertain and effectuate the intent of the legislative body. It is well-established that legislative intent may be determined from the language of the statute, and if a statute is facially clear and unambiguous, leaving no room for interpretation, the courts will enforce the statute as written. We conclude that the plain language of the statute here precludes the application of equitable subrogation principles. We conclude that the legislature specifically abrogated the application of common law principles of equity when it stated that the State "shall be subrogated to all rights of recovery," "notwithstanding any other provisions of the law." . . . [W]e must enforce the statute as written and if the legislature wishes for common law equitable principles to apply to this statute, it may certainly amend it accordingly.

*Id.* (internal citations and quotation marks omitted). The *Ezell* court's reasoning applies with equal force here.[7] Like the *Ezell* court, we find that the plain language of the North Carolina assignment and subrogation statutes quoted above demonstrates the North Carolina legislature's intent "to specifically abrogate[ ] the application of [certain] common

---

[7]The Secretary argues in the alternative that, even if § 108A-57(a) does not abrogate the common law in this case, DHHS has a right to subrogation of E.M.A.'s settlement proceeds because the common law doctrine of necessaries provides that an infant may be liable for necessary medical expenses even though she is living with a parent who has the duty to provide the same when the parent does not so provide. The Secretary argues that this common law doctrine, and not the rule E.M.A. urges, applies in this case. We need not address this argument, however, for as we conclude, the statute does abrogate the common law.

law principles," *see Ezell*, 623 S.E.2d at 81-82, including, as relevant here, the common law rule that a minor has no claim for past medical expenses insofar as it conflicts with the state's rights of recovery against a third party tortfeasor.[8] *See, e.g., Christenbury v. Hedrick*, 234 S.E.2d 3, 5 (N.C. App. 1977) ("It is well settled that the common law of England is in force in this State to the extent that it is not destructive of, repugnant to, or inconsistent with our form of government, and to the extent that it has not been abrogated or repealed by statute or has not become obsolete; however, when the General Assembly legislates in respect to the subject matter of any common law rule, the statute supplants the common law and becomes the public policy of this State in respect to that particular matter.") (citation omitted). Accordingly, we hold that, in light of the comprehensive statutory scheme before us, E.M.A.'s share of the settlement proceeds at issue in this case is not shielded from the state's reimbursement claim by virtue of her minority.[9]

---

[8]We further note that in *Ezell* and *Andrews*, North Carolina's appellate courts allowed the state to recover its Medicaid outlays for medical care costs of a tort victim minor suing for birth injuries in a medical malpractice tort action. These post-*Ahlborn* cases cannot be rationally explained unless the North Carolina courts have determined, implicitly if not explicitly, that the third-party liability statutes abrogate the common law.

[9]In a post-*Ahlborn* case presenting an analogous issue, the Supreme Court of Pennsylvania considered whether, under Pennsylvania's Fraud and Abuse Control Act (which addresses a variety of matters relating to the Medicaid program, including third-party liability), the Pennsylvania Department of Public Welfare could obtain reimbursement for Medicaid expenditures on behalf of a disabled minor where a claim for medical expenses rests with the minor's parents under Pennsylvania common law and the parents' claim was barred by the statute of limitations. *E.D.B. ex rel. D.B. v. Clair*, 987 A.2d 681, 682-83 (Pa. 2009); *see id.* at 691 (holding that, "pursuant to the Fraud and Abuse Control Act, a Medicaid beneficiary has a cause of action against his or her tortfeasor to recover and reimburse DPW for Medicaid benefits received during the beneficiary's minority"). We agree with the *E.D.B.* court that

  Common law jurisprudence fails to speak to the central issue in this case. The policy questions that are implicated focus not on

B

(1)

Given that North Carolina common law does not bar DHHS's lien against E.M.A.'s settlement proceeds, we are faced with the same question considered by the North Carolina Supreme Court in *Andrews*: Whether North Carolina's third-party liability statutes comport with federal Medicaid law and *Ahlborn* merely because the subrogation statute, N.C. Gen. Stat. § 108A-57, "caps" the state's recovery at the lesser of the actual medical expenses paid or one-third of the total settlement. The North Carolina Supreme Court in *Andrews* and the district court in this case adopted a narrow interpretation of *Ahlborn*, limiting its holding to cases in which the parties have stipulated to or otherwise allocated settlement proceeds between different categories of damages, thereby identifying a sum certain for medical expenses. Thus, these decisions are based on the view that *Ahlborn* is inapplicable in cases involving an unallocated lump-sum settlement, such as the instant matter.

On the contrary, however, nothing in Justice Stevens's opinion for a unanimous court in *Ahlborn* supports such a crabbed application of that case. The *Ahlborn* Court addressed the specific issue of "whether [ADHHS] can lay claim to more than the portion of [the recipient's] settlement that represents medical expenses." 547 U.S. at 280. The Court in no

---

parental duty but on protection of the public fisc in the provision of medical assistance to minors whose parents do not have the financial means to do so. The common law is silent as to the provision of medical care to needy minors and does not contemplate state involvement in administering such care. Accordingly, our resolution of the instant case is based on interpretation of the relevant statutory law, which incorporates social welfare developments independent of common law jurisprudence.

*Id.* at 691 n.10.

way rested its analysis of this issue on whether there has been a prior determination or stipulation as to the medical expenses portion of a Medicaid recipient's settlement. Thus, *Ahlborn* is properly understood to prohibit recovery by the state of more than the amount of settlement proceeds representing payment for medical care already received. The North Carolina statute's one-third cap on the state's recovery against a Medicaid recipient's settlement proceeds does not satisfy *Ahlborn* insofar as it permits DHHS to assert a lien against settlement proceeds intended (or otherwise properly allocable) to compensate the Medicaid recipient for other claims, such as pain and suffering or lost wages (i.e., in cases where one-third of the recipient's total settlement recovery is greater than the amount DHHS expended on the recipient's behalf).[10] *See Andrews*, 669 S.E.2d at 607-09 (Hudson, J., dissenting) (concluding that the North Carolina statutes conflict with federal Medicaid law by allowing the state to recover from a recipient funds that were for purposes other than medical expenses); *Andrews*, 655 S.E.2d at 445 (Wynn, J., dissenting) (*same*).

(2)

In determining that N.C. Gen. Stat. § 108A-57(a) complies

---

[10]We observe that the consent language included in the application for benefits executed by Sandra Armstrong would appear to reflect exactly this understanding. Sandra Armstrong agreed

> to give back to the State any and all money that is received by me or anyone listed on this application from my insurance company *for payment of medical and/or hospital bills for which the Medical Assistance program has or will make payment. In addition, I agree that all medical payments or medical support paid or owed due to a court order for me or anyone listed on this application must be sent to the State to repay past or current medical expenses paid by the State*. This includes insurance settlements resulting from an accident. I further agree to notify the county department of social services if I or anyone listed on this application is involved in any accident.

J.A. 82 (emphases added).

with *Ahlborn* by imposing what it regarded as a "reasonable cap" on the state's lien where recovery for past medical expenses is not expressly allocated, the North Carolina Supreme Court in *Andrews* relied primarily on a footnote in *Ahlborn*. *See Andrews*, 669 S.E.2d at 313 (citing *Ahlborn*, 547 U.S. at 288 n.18). In the opinion of the Court, Justice Stevens was addressing a danger suggested by proponents of full reimbursement that parties would manipulate settlement agreements reducing the allocation to the medical expense component and thereby diminishing the proportional reimbursement to the state. *Ahlborn*, 547 U.S. at 288. Justice Stevens pointed out that this risk could be avoided either by obtaining a state's advance consent to the allocation or by requiring that the allocation be submitted to the court. *Id.* In footnote 18, Justice Stevens noted that "[a]s one amicus observes, some States have adopted special rules and procedures for allocating tort settlements . . . . Although we express no view on the matter, we leave open the possibility that such rules and procedures might be employed to meet concerns about settlement manipulation." *Id.* at n.18 (citing Brief of the Association of Trial Lawyers of America as *Amicus Curiae* in Support of Respondents at 20-21) (hereafter "ATLA Brief").

We are not persuaded that a mere "reasonable cap" on a state's recovery from an unallocated lump-sum settlement satisfies the federal anti-lien law as required by *Ahlborn*. Indeed, contrary to the *Andrews* court's reliance on Justice Stevens's footnote, the ATLA Brief, rather than advocating full recovery subject only to a statutory cap, discussed procedures in several states to have "mini-hearings" to set allocations of proceeds from tort settlements where there is no agreement among the interested parties. Nevertheless, the Supreme Court of North Carolina found that footnote 18 in *Ahlborn* authorizes the states to mandate full recovery up to a legislatively-determined, across-the-board limit or cap. This reliance is misplaced.

It is also illuminating that the Centers for Medicaid and Medicare Services ("CMS") issued a memorandum to all

Associate Regional Administrators for Medicaid and State Operations in the wake of the *Ahlborn* decision to aid the states in understanding the effect the decision would have on state third-party liability recovery. *See* Memorandum from Gale Arden, Director of CMS's Center for Medicaid and State Operations Disable and Elderly Health Programs Group (DEHPG) to all Associate Regional Administrators for Medicaid and State Operations, "State Options for Recovery Against Liability Settlements in Light of U.S. Supreme Court Decision in *Arkansas Department of Human Services v. Ahlborn*" (July 3, 2006) (hereafter "CMS Memorandum"). The CMS Memorandum stated that, post-*Ahlborn*, "if a State attempted to recover from more than the portion of a settlement that the parties allocated to medical items and services, it was in violation of the federal anti-lien statute." *Id.* Additionally, the CMS Memorandum clarified that, "to the extent State laws permit recovery over and above what the parties have appropriately designated as payment for medical items and services, the State was in violation of federal Medicaid laws." *Id.*

To aid states in ensuring compliance with *Ahlborn*, the CMS Memorandum listed various actions states may and may not take: (1) states may only require assignment of the right to payment from a third party for healthcare (or medical) items and services; and (2) states may not pass or enforce laws which broaden the recovery rights, vis-à-vis Medicaid beneficiaries, of the state Medicaid agency, allowing such agencies to recover from damages other than medical expenses provided for in the award amount, even if this means that Medicaid must forego full recovery of its claim.[11] On the other hand, a state may wish to, *inter alia*: (1) "enact laws which provide for a specific allocation amongst dam-

---

[11]The unrebuttable presumption created by N.C. Gen. Stat. § 108A-57, in the form of a statutory one-third cap on the state's third-party liability recovery against a Medicaid recipient's tort settlement, clearly falls into this category.

age[s], i.e., pain and suffering, lost wages, and medical claims"; (2) "require that cases can only be compromised with the consent of the state"; (3) "pass laws which require a mandatory joinder of a State when a Medicaid lien is at issue"; (4) "strengthen their laws regarding the duty of attorneys to notify and cooperate to include provisions which could render voidable any settlement of which the State was not notified and given an opportunity to present its recovery claim for medical assistance paid." *Id.* In addition, the CMS Memorandum emphasized the *Ahlborn* Court's admonition that states should become involved in the underlying tort litigation in order to influence the amount that is allocated in a settlement to medical items and services. *Id.* (stating that "absent such involvement, the Court found little sympathy in the State's argument that they should be able to recover the total settlement").

Indeed, in reaction to the Supreme Court's ruling in *Ahlborn*, many states that previously imposed statutory caps on Medicaid third-party recovery amended their laws in various ways. Most notably, California changed its laws from imposing a statutory cap of one-half of the recovery to limiting recovery to the portion of the award specifically representing payment for medical expenses or care. Petition for Writ of Certiorari at 20-23, *Brown*, 129 S. Ct. 2792 (No. 08–1146) (discussing Cal. Welf. & Inst. Code § 14124.76). Prior to *Ahlborn*, Pennsylvania's third-party liability statute imposed a fifty percent cap on the state's recovery. *Id.* at 23-24 (discussing 62 Pa. Cons. Stat. Ann. § 1409); *see infra* pp. 35-36 (discussing *Tristani*, 652 F.3d 360). In the wake of *Ahlborn*, however, the Pennsylvania legislature enacted Pa. Cons. Stat. Ann. § 1409.1, which provides *inter alia* that "the court or agency shall allocate the judgment or award between the medical portion and other damages . . ." Similarly, Oklahoma amended its statute to provide that the state's lien extends to the entire settlement, after attorneys fees and costs, unless a more limited allocation of damages to medical expenses is shown by clear and convincing evidence. *Brown*, 129 S. Ct. at 24 (discussing Okla. Stat. Ann. tit. 63, § 5051.1(D)(1)(d))

(internal quotation marks omitted). Idaho continues to use its pre-*Ahlborn* statute, which allows for full payment to Medicaid prior to payment of other expenses. *Id.* at 26-27 (discussing Idaho Code Ann. § 56-209b(6)). Post-*Ahlborn*, however, this statute has been interpreted to include a rebuttable presumption of such full payment when an allocation is agreed upon by the parties (including the state agency) or is determined through a hearing. *Id.* at 27 (citing *State Dep't of Health & Human Welfare v. Hudelson*, 196 P.3d 905, 912 (Idaho 2008)). States that continue to impose a statutory cap or allow full recovery for Medicaid reimbursements post-*Ahlborn* include Florida, Georgia, Hawaii, Iowa, and North Carolina. *Id.* at 17; *see* Fla. Stat. Ann. §§ 409.910(1), (4), (6)(a); Ga. Code Ann. § 49-4-149(d); Haw. Rev. Stat. Ann. § 346-37(d); Iowa Code Ann. § 249A.6; N.C. Gen. Stat. § 108-57(a).

(3)

On the basis of *Ahlborn*'s clear holding that the general anti-lien provision in federal Medicaid law prohibits a state from recovering any portion of a settlement or judgment not attributable to medical expenses, DHHS's lien on E.M.A.'s settlement proceeds in this case violates federal law. In order to comply with 42 U.S.C. §§ 1396a(a)(18), 1396p, and *Ahlborn*, North Carolina is free to implement a process by which settlement proceeds are explicitly allocated or otherwise determined. In this case, we must remand for an evidentiary hearing consistent with this opinion to determine the proper amount of the DHHS lien on E.M.A.'s settlement proceeds.

Just as there is insufficient information before this court regarding allocation of the settlement proceeds among various categories of damages, we cannot apply the "proportional analysis" that E.M.A. argues is proper under *Ahlborn*. As discussed above, the parties in *Ahlborn* stipulated that the settlement of $550,000 represented only one-sixth of the true value of Ahlborn's claim, because the settlement was limited due to

the amount of insurance available, and determined that the state was thereby entitled to only one-sixth of the stipulated medical expenses. E.M.A.'s settlement is distinguishable in that there was no issue (so far as the record before us shows) of limited insurance and no stipulation. On remand, the district court must determine the true value of the case in allocating medical expenses, but *Ahlborn* does not mandate such a "proportional analysis," to use the term that Appellants have coined in their briefing.[12]

In reaching the conclusion we do, we find the Third Circuit's analysis of the analogous provisions of Pennsylvania law particularly persuasive in our disposition of this appeal. *See Tristani*, 652 F.3d 360. Although the Third Circuit found that the Pennsylvania statutory presumption that fifty percent

---

[12]In an analogous case arising under post-*Ahlborn* Oklahoma law, the Tenth Circuit has helpfully indicated the kind of considerations that might be salient in assessing the propriety of a particular lien determination:

> [A] reduction in a Medicaid lien can be justified only by showing a reason why the plaintiff would agree to allow the defendant to pay less than the full amount of the Medicaid lien. The usual reasons would be that the liability of the settling defendant is uncertain or that the defendant lacks the money to pay for his full liability (or both); so the plaintiff would be willing to take a proportionate reduction in each component of the damages that she would expect the jury to award if the defendant were found liable. For example, if the settlement is for 50% of what the jury is likely to award because there is only a 50% chance that the jury will find liability, the Medicaid lien could properly be cut in half. Or if liability is clear and the expected verdict would be $2 million, but the defendant can pay only $1 million, a 50% reduction would also be in order. A further reduction might also be appropriate if there are doubts about whether the jury would award as damages all the medical expenses paid by Medicaid-because, for example, one could question whether the expenses were caused by the negligent acts of the defendant-although generally one can be more confident of recovering those expenses in full than in recovering, say, the full claim for pain and suffering.

*Price v. Wolford*, 608 F.3d 698, 707-08 (10th Cir. 2010).

of a settlement amount was properly allocable to medical expenditures may be deemed to fall within the acceptable "special rules and procedures" contemplated by *Ahlborn* in footnote 18, it cautioned the state that it must afford a mechanism permitting beneficiaries to rebut such a presumption,[13] reasoning as follows:

> Although the *Ahlborn* Court acknowledged the existence in state law of "special rules and procedures" for allocating settlements, and left open the possibility that such rules may be employed to address concerns about settlement manipulation, 547 U.S. at 288 n. 18, it did not give states unfettered discretion to allocate settlements without regard to the actual portion attributable to medical expenses. Indeed, *Ahlborn* expressed a preference for resolving allocation disputes "either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision." *Id.* at 288.

> We express no view as to whether allocation disputes of this type must be adjudicated by a court, or may instead be resolved through other "special rules and procedures." *Id.* at 288 n. 18. We hold merely that in determining what portion of a Medicaid beneficiary's third-party recovery it may claim in reimbursement for Medicaid expenses, the state must have in place procedures that allow a dissatisfied beneficiary to challenge the default allocation. As the Beneficiaries point out, without such a rule noth-

---

[13]Indeed, the Pennsylvania legislature had amended that state's law after *Ahlborn* precisely to provide such a mechanism, there, an administrative hearing. *See Tristani*, 652 F.3d at 377-78. Nevertheless, the *Tristani* court was required to address an earlier version of the state law because one of the state claims to reimbursement at issue pre-dated the legislative change. *Id.*

ing would prevent states from allocating 75%, 90% or even 100% of a settlement to medical expenses, thereby eviscerating the rule promulgated by *Ahlborn*. Because the District Court concluded otherwise, we will reverse its order in this respect and remand for further proceedings consistent with this opinion.

*Id.* at 378.

We agree with the reasoning of the Third Circuit and hold that to comport with federal law as interpreted in *Ahlborn*, under the circumstances in this case, North Carolina's statutory presumption must be subject to adversarial testing.[14] Under the circumstances of the case before us, absent any state-created mechanism for such testing, it will fall to the district court to conduct the appropriate proceedings.

V

In sum, E.M.A.'s argument that DHHS cannot assert a lien against her portion of the settlement proceeds because a minor has no cause of action for past medical expenses under North Carolina common law fails because the state Medicaid statutes at issue fully abrogate the common law. Nevertheless, we hold that the North Carolina third-party liability statutes, N.C. Gen. Stat. §§ 108A-57 and -59, as applied in this case, fail to comply with federal Medicaid law as interpreted by the Supreme Court in *Ahlborn*. As the unanimous *Ahlborn* Court's decision makes clear, federal Medicaid law limits a

---

[14]Notably, in its opinion in this case, the district court cited, in support of its narrow reading of the *Ahlborn* holding, the lower court's decision in *Tristani. See Armstrong*, 722 F. Supp. 2d at 658 (citing *Tristani v. Richman*, 609 F. Supp. 2d 423, 464-65 (W.D. Pa. 2009)). But, as just discussed, on appeal, the Third Circuit specifically reversed that portion of the lower court's judgment in *Tristani* that had rejected the need for adversary testing of the fifty percent presumption under Pennsylvania law. *See* 652 F.3d at 378.

state's recovery to settlement proceeds that are shown to be properly allocable to past medical expenses. In the event of an unallocated lump-sum settlement exceeding the amount of the state's Medicaid expenditures, as in this case, the sum certain allocable to medical expenses must be determined by way of a fair and impartial adversarial procedure that affords the Medicaid beneficiary an opportunity to rebut the statutory presumption in favor of the state that allocation of one-third of a lump sum settlement is consistent with the anti-lien provision in federal law.

Accordingly, for the reasons set forth, we vacate the judgment of the district court and remand for an evidentiary hearing at which the district court shall determine the proper amount of DHHS's Medicaid lien in this case in accordance with *Ahlborn* and the views expressed in this opinion.

*VACATED AND REMANDED*

AGEE, Circuit Judge, concurring in part, dissenting in part, and concurring in the judgment:

I join the majority opinion except for Section IV(A) (and related references), which concludes that the relevant North Carolina Medicaid statutes, N.C. Gen. Stat. § 108A-59(a) ("the assignment statute") and N.C. Gen. Stat. § 108A-57(a) ("the subrogation statute") abrogate the common law of North Carolina under which a minor has no cause of action for recovery of medical expenses incurred during minority. Accordingly, I respectfully dissent from that portion of the majority opinion and write separately because nothing in either the assignment statute or the abrogation statute suggest that the General Assembly of North Carolina intended to extend or create such a cause of action. Furthermore, I find no support in the decided cases of the North Carolina appellate courts holding that state's legislature abrogated the otherwise applicable common law rule. Consequently, I would hold the common law rule survives the enactment of North Carolina's

Medicaid statutes.[1] Nonetheless, for the reasons discussed below, I would vacate and remand the judgment of the district court.

Unless modified by statute, the common law is the law of North Carolina, as in many states. *See State v. Vance*, 403 S.E.2d 495, 498 (N.C. 1991); N.C. Gen. Stat. § 4-1("All such parts of the common law . . . [as are] not abrogated, repealed, or . . . obsolete, are hereby declared to be in full force within this State."). "When the [North Carolina] General Assembly legislates in respect to the subject matter of a common law rule, the statute supplants the common law rule in regard to that matter." *State v. Green*, 477 S.E.2d 182, 187 (N.C. Ct. App. 1996) (citing *McMichael v. Proctor*, 91 S.E.2d 231, 234 (N.C. 1956)). However, the common law controls unless the legislature expressly abrogates it. *See In re Thompson*, 327 S.E.2d 908, 909 (N.C. Ct. App. 1985); *see also Lowe v. Harris*, 17 S.E. 539, 544 (N.C. 1893) (Shepherd, C.J., concurring) ("[I]f the legislature intended to abrogate these [common law] rules, in whole or in part, it should have expressed such intention in the clearest and most unmistakable manner."); *Price v. Edwards*, 101 S.E. 33, 36 (N.C. 1919) ("[S]tatutes in derogation of common law . . . are construed strictly.").[2]

Under the common law of North Carolina, a minor has no cause of action against a tortfeasor for medical expenses incurred during minority. *See Vaughan v. Moore*, 366 S.E.2d

---

[1]In resolving this difficult question of the interplay between North Carolina's common law and its Medicaid statutes, it would be helpful to seek guidance from that state's highest court. Unfortunately, unlike the other states in this circuit, North Carolina alone provides no mechanism for us to certify questions of state law to its Supreme Court. *See MLC Automotive, LLC v. Town of Southern Pines*, 532 F.3d 269, 284 (4th Cir. 2008).

[2]The common law is incorporated into the North Carolina statutory scheme by N.C. Gen. Stat. § 4-1. North Carolina courts abide by the maxim that "repeal by implication is not a favored rule of statutory construction." *State v. Greer*, 302 S.E.2d 774, 777 (N.C. 1983) (internal quotation marks omitted).

518, 520 (N.C. Ct. App. 1988). Rather, the right to recover for medical expenses lies with the parents, but the minor (through his or her proper representative) may recover for other damages, such as pain and suffering or loss of future income. *Id.* (citing *Ellington v. Bradford*, 86 S.E.2d 925, 926 (N.C. 1955)). Applying that principle to this case, it would appear that E.M.A. could not recover against her tortfeasor for the incurred medical expenses. As a consequence, the principles enunciated in *Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268 (2006), would insulate E.M.A.'s allotted portion of the settlement proceeds from the State's lien unless that portion did in fact include medical expense reimbursements.

Notwithstanding North Carolina common law, however, the majority opinion, relying upon the "plain language" of the subrogation statute and the assignment statute, as well as pre-*Ahlborn* authority, allows the State to encumber E.M.A.'s portion of settlement proceeds. I do not agree the statutes at issue here lead to that result.

The assignment statute states that "[n]otwithstanding any other provisions of the law, by accepting medical assistance, the recipient shall be deemed to have made an assignment to the State of the right to third party benefits . . . to which he may be entitled." N.C. Gen. Stat. § 108A-59(a). The subrogation statute uses similar terms to express that: "[n]otwithstanding any other provisions of the law, to the extent of payments under this Part, the State, or the county providing medical assistance benefits, shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of this assistance . . . ." *Id.*

With particular emphasis on the "[n]otwithstanding any other provisions of the law," language, the majority opinion concludes that these statutes "by their plain language abrogate the common law rule that a minor cannot recover for medical expenses." Maj. Op. at 26. Neither statute, however, conflicts

with the common law rule at issue here by its plain terms or otherwise.

The assignment statute specifically limits the "rights" assigned: "the recipient [of Medicaid benefits] shall be deemed to have made an assignment to the state of the right to third party benefits . . . *to which he may be entitled*." (Emphasis added.) By its express language, this statute does not purport to enlarge the preexisting rights of a beneficiary of Medicaid benefits, including those possessed by minors. A plain reading of the statute instead leads to the conclusion that, to the extent a beneficiary of Medicaid benefits has a claim to third party benefits, that beneficiary by operation of law assigns those rights to the state. The statute could have easily been written to create a new cause of action in the Medicaid beneficiary, but it was not. Rather, the statute speaks of the assignment only of the rights, if any, that already exist in the beneficiary.

In this regard, *E.D.B. ex rel. D.B. v. Clair*, 987 A.2d 681 (Pa. 2009), cited *ante* at 28 n.9, is instructive. In that case, the Supreme Court of Pennsylvania found, pursuant to its state's Fraud and Abuse Control Act (which operates, like the North Carolina Medicaid statutes at issue here, to regulate the state's right of assignment of benefits) "a Medicaid beneficiary has a cause of action against his or her tortfeasor to recover and reimburse [the state] for Medicaid benefits received during the beneficiary's minority." *Id.* at 691.[3] The Pennsylvania statutes at issue did not expressly provide for a cause of action for a minor tort-victim for medical expenses, but rather, Pennsylvania's highest court found that the legislature intended to create such a cause of action in order to effectuate its goal that

---

[3]The court in *E.D.B.* found such a cause of action in Pennsylvania's statutes. Its analysis demonstrates, however, that the relevant inquiry is not whether a state had mandated that the minor assign his or her rights to the state, but rather, whether the minor had a recognized right to recover (i.e., a cause of action) and therefore something to assign.

"the entirety of a beneficiary's settlement would be subject to [the state's] claim." *Id.* at 690. Although that goal was unattainable after *Ahlborn*, the court noted that "nothing in *Ahlborn* affects, negates, weakens, or calls into question the reasoning . . . as to the General Assembly's *intent* with regard to the filing of claims by beneficiaries for Medicaid expenditures incurred during their minority." *Id.* at 691 (emphasis in original). The key here, in contradistinction from the statutes or court decisions in North Carolina, is that the Pennsylvania Supreme Court specifically concluded a cause of action existed in a minor, therefore giving the minor a chose to assign.

In stark contrast, North Carolina's Court of Appeals has rejected the notion that the statutes at issue create a cause of action in a minor for medical expenses, even where that minor is a beneficiary of Medicaid benefits. *See Campbell v. N.C. Dep't of Human Res.*, 569 S.E.2d 670, 672 (N.C. Ct. App. 2002) (stating that because, under North Carolina common law, a minor has no cause of action for medical expenses, "the settlement money which [the minor] plaintiff received was not recompense for medical expenses"). *Campbell* thus acknowledged that, even after the enactment of the North Carolina Medicaid statutes, a minor lacked a cause of action for medical expenses, ruling instead that the State was nonetheless entitled to the plaintiff's settlement proceeds on other grounds (although this rationale has since been nullified by *Ahlborn*).

The same is true of North Carolina's subrogation statute which requires that "to the extent of [Medicaid] payments . . . , the State, . . . shall be subrogated to *all rights of recovery* . . . of the beneficiary of this assistance[.]" N.C. Gen. Stat § 108A-57(a) (emphasis added). Again, the statute speaks only of the existing rights of the beneficiary, and simply does not create any new rights to a cause of action in a minor. E.M.A. cannot assign, nor can the State be subrogated to, rights that she does not possess.

I am also not persuaded that *Ezell v. Grace Hospital, Inc.*, 623 S.E.2d 79 (N.C. Ct. App. 2005), *rev'd per curiam for the reasons stated in the dissenting opinion*, 631 S.E.2d 131 (N.C. 2006), is applicable to E.M.A's argument. That case dealt with the issue of whether common law equitable limitations on recovery could be applied to reduce the State's recovery of third-party benefits paid to a Medicaid beneficiary. *See Ezell*, 623 S.E.2d at 81. *Ezell*'s holding that the subrogation statute abrogates common law equitable recovery principles is simply a recognition that application of the common law yields a different result than application of the statutory language. As explained above, that is not the case with the common law rule limiting the minor's right to recovery for medical expenses. *Ezell* says nothing about changing the North Carolina common law rule regarding the cause of action for recovery of a minor's medical expenses.

The majority opinion, however, relies on *Campbell* as additional support for its holding that the common law rule is abrogated. In that case, the North Carolina Court of Appeals considered and rejected a claim similar to that raised by E.M.A. *Ahlborn*, however, which was decided four years after *Campbell*, has clearly eviscerated the rationale of *Campbell* such that its holding should not be entitled precedential weight.

In *Campbell*, the plaintiff, who was a minor at the time he was injured by a third-party tortfeasor and received Medicaid benefits, claimed that the State had no right of subrogation because he lacked a cause of action under North Carolina law for medical expenses. While agreeing with the premise that, at common law, a minor may not recover for medical expenses incurred during minority, the North Carolina Court of Appeals reasoned that "[N.C. Gen. Stat.] § 108A-57(a) does not restrict [the State's] right of subrogation to a beneficiary's right of recovery only for medical expenses." 569 S.E.2d at 672. Because North Carolina's Medicaid statutes allowed the state to place a lien upon any of the plaintiff's set-

tlement proceeds, regardless of whether they were for medical expenses, the plaintiff's right (or lack thereof) to receive medical expenses in tort was no barrier to the State's lien. The *Campbell* court relied on prior North Carolina cases for the proposition that "to the extent of Medicaid payments under [the] Medical Assistance Program" the State is "subrogated to all rights of recovery of the beneficiary of medical assistance." *Id.* (citing and quoting *N.C. Dept of H.R. v. Weaver*, 466 S.E.2d 717, 719 (N.C. Ct. App. 1996), (emphasis and internal alterations omitted).

*Campbell* also relied heavily on *Payne v. North Carolina Department of Human Resources*, 486 S.E.2d 469 (N.C. Ct. App. 1997), a case in which the North Carolina Court of Appeals considered and rejected a challenge to North Carolina's Medicaid subrogation scheme based on the federal anti-lien statute found at 42 U.S.C. § 1396p(a)(1). *Campbell* described the *Payne* holding as follows:

> Plaintiff [in *Payne*] argued that [the State's] subrogation rights extended only to the amount allocated to his mother for medical expenses. This Court disagreed, and held that "by accepting Medicaid benefits, [minor plaintiff] assigned his right to third-party benefits to [the State], and [the State's] lien vested at that time."

*Campbell*, 569 S.E.2d at 672-73.

This reasoning is plainly at odds with *Ahlborn*'s command that a state Medicaid agency may not seek assignment of "rights to payment for anything other than medical expenses-not lost wages, not pain and suffering, not an inheritance." *Ahlborn*, 547 U.S. at 281.[4]

---

[4]The fact that, pre-*Ahlborn*, the *Campbell* and *Payne* courts permitted a Medicaid lien regardless of the medical expense portion of tort recovery, combined with the statutory percentage limit, may explain why the particular issue now raised by E.M.A. had not previously been raised or addressed by the North Carolina courts post-*Ahlborn*.

Accordingly, when the *Campbell* court opined that "[the State] is entitled to recover the costs of medical treatment provided for a minor, even when the funds received by the minor are not reimbursement for medical expenses[,]" 569 S.E.2d at 672, its rationale conflicts directly with *Ahlborn*. *See* 547 U.S. at 282 ("[T]he State's assigned rights extend only to recovery of payments for medical care."). While it is true that most creditors can usually satisfy debts owing to them from any assets of the debtor that the creditor can find, this is not the case in the Medicaid context. *Ahlborn* and the federal anti-lien statute at 42 U.S.C. § 1396p make clear that a state Medicaid lien can only be levied against those assets received for medical expenses.

> There is no question that the State can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§ 1396a(a)(25) and 1396k(a). . . . To the extent that the forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. *But that does not mean that the State can force an assignment of, or place a lien on, any other portion of Ahlborn's property.*

*Ahlborn*, 547 U.S. at 284-85 (internal citations omitted) (emphasis added). *Campbell*, which stands in obvious conflict with that holding, must give way and cannot be a basis upon which to find abrogation of the North Carolina common law rule.

Indeed, the one aspect of *Campbell* that seems to survive *Ahlborn* is the acknowledgement of the North Carolina common law that because "a minor, even after reaching majority, may not recover for medical expenses incurred during minority . . . *the settlement money which plaintiff received was not recompense for medical expenses*." 569 S.E.2d at 672 (internal citation and quotation marks omitted) (emphasis added).

That statement of North Carolina law does not rest on a premise that has been rejected by the Supreme Court, and should guide our analysis of E.M.A.'s claim on appeal. It is a recognition that, even in light of North Carolina's Medicaid statutes, a minor still lacks a cause of action for medical expenses. Accordingly, the argument that the North Carolina Medicaid subrogation and assignment statutes somehow abrogate this right is not an accurate statement of North Carolina law in my view.

I therefore must disagree with the conclusion in the majority opinion that the North Carolina Medicaid statutes "by their plain language" abrogate the common law. Maj. Op. at 26. And, as noted above, no North Carolina appellate court decision, in conformity with *Ahlborn*, so construes those statutes. To the contrary, the statutes at issue plainly do not conflict with, and nor do they abrogate, the common law rule that minors may not recover for medical expenses in North Carolina.

Nevertheless, while the minor does not have a cause of action for medical expenses, that does not necessarily mean, in an otherwise unallocated settlement, that none of the funds comprising the minor's share were not in fact representative of medical expenses already incurred or allocated to a Special Needs Trust ("SNT") in anticipation of medical expenses to be incurred in the future. A competent advocate for a minor in structuring such a settlement would, knowing the North Carolina common law, attempt to have allocated as much as possible of a fixed settlement to the minor's share, irrespective of what categories of damages comprise the settlement amount. That allocation would be of little moment to the tortfeasor, whose only interest is in release from liability. The record before the court in the case at bar simply does not allow us to determine whether E.M.A.'s settlement share did include an amount actually represented by the medical expense damages.

The state trial court order approving the settlement does not make the findings necessary to resolve to what extent the Medicaid lien, under *Ahlborn*, is applicable here. I do not fault the state trial judge as there was (like now) no clear rule by appellate decision or legislative enactment on point. If the matter of medical expense reimbursement was part of the calculation put before the state trial court, and the settlement order stated how an allocation between the parties was determined with the damage elements comprising each share, then the determination as to what could be attached by the Medicaid lien should be straightforward. Such an explicit allocation is not in the record before us, however. It is simply not possible, on this record, to ascertain what elements of damages comprise the respective settlement shares of E.M.A. or her parents. For that reason I agree with the majority that the district court judgment must be vacated and remanded. Should it be determined, on remand, that any portion of E.M.A.'s settlement share was in fact represented by her past medical expenses, then the State's Medicaid lien could properly attach to that portion under *Ahlborn*. However, should it be determined that no part of E.M.A.'s share was represented by her past medical expenses, no lien could attach.

On remand, the district court should consider two salient questions:

1. What amount of the settlement was allocated to each party: (a) E.M.A. (acting through her guardian ad litem); and (b) Earl and Sandra Armstrong (E.M.A.'s parents)?

2. What elements of damage comprise the award each party received? Put another way, were the respective amounts awarded on an ad hoc or arbitrary determination or was there an actual basis for the division between the parties based on the merits of the various elements of damage, such as medical expenses?

Although cases that have approved the default statutory percentage method for allocating settlement proceeds did so

partly on the basis to avoid a case-by-case determination of the medical expense portion of settlements, *e.g.*, *Andrews v. Haygood*, 669 S.E.2d 310, 314 (N.C. 2008), I agree with the majority opinion that *Ahlborn* requires such fact-specific inquiries in a case such as is now before us. Until states develop a specific mechanism for determining the medical expense portion of unallocated settlements, a judicial resolution is the only means by which the *Ahlborn* principles for application of a Medicaid lien can be established. The Supreme Court seemed to recognize this point in *Ahlborn* that determining Medicaid lien status on an allocated or unallocated settlement could be "either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision." *Ahlborn*, 547 U.S. at 288.

I am in agreement with the majority opinion's conclusion that "[t]he North Carolina statute's one-third cap on the state's recovery against a Medicaid recipient's settlement proceeds does not satisfy *Ahlborn* insofar as it permits DHHS to assert a lien against settlement proceeds intended (or otherwise properly allocable) to compensate the Medicaid recipient for other claims[.]" Maj. Op. at 30. While I disagree that North Carolina has abrogated its common law rule that minors have no cause of action for medical expenses, I do agree a remand is necessary in order for the district court to determine whether E.M.A. actually received any settlement funds for medical expenses, and if so, how much.

For the foregoing reasons, I respectfully dissent from Section IV(A) (and related references) of the majority opinion, but concur otherwise and concur in the judgment.